[Civ. No. 49966. Second Dist., Div. Two. June 16, 1977.]

TRINIDAD PARADA, Plaintiff and Appellant, v.
THE SMALL CLAIMS COURT FOR THE LOS ANGELES
JUDICIAL DISTRICT OF LOS ANGELES COUNTY et al.,
Defendants and Respondents;
LEON A. GENDREAU, Real Party in Interest and Respondent.

**COUNSEL**

Warren L. Bachtel for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

Leon A. Gendreau, in pro. per., for Real Party in Interest and Respondent.

**OPINION**

**COMPTON, J.**—Trinidad Parada, doing business as Bud's Auto Service, filed an action in the Small Claims Court of the Los Angeles Judicial District against Leon Gendreau to recover $432.50 alleged to be owing for repairs on Gendreau's automobile.

The small claims court entered judgment for Gendreau on the grounds that Parada did not have a written authorization for the work.

That court was of the opinion that Business and Professions Code section 9884.9, subdivision (a),[1] required such written authorization.

Parada petitioned the Superior Court of Los Angeles County for a writ of mandate to direct the small claims court to enter judgment in his favor. The superior court denied the petition declaring that the case of *Bennett* v. *Hayes,* 53 Cal.App.3d 700 [125 Cal.Rptr. 825], appeared to "bar an action for the reasonable value of automotive repair services." Parada appeals from the judgment denying the petition for mandate.

On May 28, 1975, Gendreau brought his 1966 Oldsmobile to Parada's auto repair shop in San Pedro, California. Parada made a written estimate of $544.12 for repairs to be made on the automobile. Gendreau asked Parada to repair the car at a lower price by omitting the paint refinishing work. Parada agreed to do the lessened amount of work for the sum of $432.50 and made appropriate notations on the written estimate showing the work which was to be done on the automobile. Gendreau gave his approval to the change in the written estimate showing the omission of the paint refinishing work and also gave his oral authorization for Parada to proceed in making the repairs.

When the automobile was delivered to Gendreau he expressed satisfaction with the work done and gave Parada a check in the amount of $432.50 as agreed. Shortly after the check was deposited it was returned to Parada marked "Payment Stopped."

The Automotive Repair Act (Bus. & Prof. Code, § 9880 et seq.) was enacted to "foster fair dealing, [and] to eliminate misunderstandings" (55 Ops.Cal.Atty.Gen. 276, 278) in transactions involving automotive repairs. It serves to prevent, among other things, an auto repair business from obtaining possession of a vehicle by leading the owner to believe that the cost of repair will be in an amount agreeable to him only to return and find that the cost has increased substantially. Under such a situation the

---

[1]Business and Professions Code section 9884.9, subdivision (a), provides: "The automotive repair dealer shall give to the customer a written estimated price for labor and parts necessary for a specific job. No work shall be done and no charges shall accrue before authorization to proceed is obtained from the customer. No charge shall be made for work done or parts supplied in excess of the estimated price without the oral or written consent of the customer which shall be obtained at some time after it is determined that the estimated price is insufficient and before the work not estimated is done or the parts not estimated are supplied. Nothing in this section shall be construed as requiring an automotive repair dealer to give a written estimated price if the dealer does not agree to perform the requested repair."

owner has only two options, (1) to pay the increased price, or (2) to seek legal relief in obtaining possession of his car. (Civ. Code, § 3071.)

Hence the Automotive Repair Act, as noted, requires (1) a written estimate, and (2) customer authorization to proceed with the work. Delivery of the car to the repairer of course suggests authorization to proceed, however the repairer can only perform those services set forth in the written estimate. If additional work, over and above that estimate, is found to be required, the law requires an *oral or written* consent.

*Bennett* v. *Hayes, supra,* held that where no written estimate was prepared then any work done was "excess" and the repair service could not collect for repairs actually made. Here, however, Parada provided a written estimate. The work performed was less than that estimate. Nothing in the statute nor in *Bennett* v. *Hayes, supra,* requires that the customer give his *consent or authorization in writing.* In fact the statute specifically permits oral authorization for "excess" repairs.

■ Both the small claims court and the superior court were in error in the basis upon which relief was denied to Parada. That, however, does not resolve the matter.

Code of Civil Procedure section 117j, provided at the applicable time that a plaintiff in a small claims action may not appeal from an adverse judgment.[2] "A small claims court plaintiff, taking advantage of the speedy, inexpensive procedures and other benefits of that court, accepts all of its attending disadvantages such as the denial of the right . . . to an appeal." (*Cook* v. *Superior Court,* 274 Cal.App.2d 675, at pp. 677-678 [79 Cal.Rptr. 285].) Inherent in this scheme is, as is the case herein, the possibility of an occasional error of law that will be uncorrectable.

Thus a plaintiff who elects to proceed in the small claims court is finally bound by an adverse judgment. This means that the lack of the right of appeal cannot then be relied upon as a basis for a petition for an extraordinary writ which is designed to seek appellate review of an adverse judgment. Such a procedure would emasculate the prohibition against appeals by plaintiffs from judgments rendered by a small claims court.

[2]Code of Civil Procedure section 117j was repealed by Statutes 1976, chapter 1289. Code of Civil Procedure section 117.8, subdivision (a), added by Statutes 1976, chapter 1289, notes that the judgment shall be conclusive upon the plaintiff.

Hence the superior court correctly denied Parada's petition for a writ of mandate, albeit for the wrong reason.

The judgment is affirmed.

Beach, J., concurred.

**ROTH, P. J.**—I concur and dissent:

I agree that an appeal will not lie.

I do not agree that an application for an extraordinary writ equates with an appeal or that the exclusion of an appeal embraces an exclusion of the right to apply for an extraordinary writ.

I think certiorari lies and I would treat this petition for a writ of mandate as an application for a writ of certiorari.

The meager record before us shows indisputably the following facts:

(1) Section 9884.9, subdivision (a), was complied with; as required, a written estimate was supplied.

(2) Nothing in section 9884.9 requires a written authorization to omit an item included in the written estimate which reduces the amount in the original estimate.

(3) In any event, oral authorization sufficient under the statute was given and is proved by:

(a) the request of the respondent to omit painting; and

(b) respondent's approval of and payment for the job according to reduced estimate by check concurrently with the delivery of the auto.

Code of Civil Procedure section 1068 provides in pertinent part: "A writ of review may be granted ... when an inferior tribunal ... has exceeded the jurisdiction of such tribunal ... and there is no appeal ... [or] any plain, speedy, and adequate remedy."

It is not within the power of a court to *disregard undisputed evidence*; and/or *to fail in all respects* to act in accordance with the specific

directives of an applicable statute; and/or to substitute or add a condition not required by the applicable statute.

In the case at bench, the net effect of the alleged judgment is to judicially approve the conduct of respondent whereby he obtained repossession of his automobile by delivery of a check he did not intend to pay. A decision so made is not a judgment but is in effect a disposition of a case based upon the exercise of the arbitrary will or the whim and caprice of the judicial officer and amounts to a complete deprivation of a trial.

*To ignore uncontradicted evidence certainly equates with a refusal to hear evidence* (*McClatchy* v. *Superior Court,* 119 Cal. 413 [51 P. 696]). A review by certiorari (Code Civ. Proc., § 1068) is impelled by *McClatchy* especially when complete disregard of the evidence is aggravated by a total misconception of what the statute required.

In *McClatchy,* the court refused to hear evidence in a comtempt matter offered to contradict that reflected in a reporter's transcript. At bench, the court refused to consider any evidence or law contrary to *its stated position.*

In *McClatchy,* the court said at pages 418-419: "That the result of this action of the court in thus requiring petitioner, in effect, to submit his defense upon the evidence for the people, was, in substance and effect, to deprive petitioner of the right to be heard in his defense, is, we think, obvious. It is contended by respondent that, even if the action of the court was wrong, *it was error merely, which cannot be reviewed on certiorari*; that the *court having jurisdiction of the person and subject matter,* the *mere method in which it exercised* such *jurisdiction cannot be inquired into* in this proceeding, which looks only to the question of jurisdiction. If *the premise were correct,* the conclusion would undoubtedly follow. *But with* the *view that the action involved no more than mere error* we cannot coincide. *It was error,* certainly, *but it was more than that.* It was a transgression of a fundamental right guaranteed to every citizen charged with an offense, or whose property is sought to be taken, of being heard before he is condemned to suffer injury. Any departure from those recognized and established requirements of law, however close the apparent adherence to mere form in method of procedure, which has the effect to deprive one of a constitutional right, is as much an excess of jurisdiction as where there exists an inceptive lack of power. 'The substance and not the shadow determines the validity of the exercise of

the power.' (*Postal Tel. etc. Co.* v. *Adams,* 155 U.S. 689, 698 [39 L.Ed. 311, 316, 15 S.Ct. 268].)

"While the writ of *certiorari* is not a writ of error, 'it is nevertheless,' as suggested in *Schwarz* v. *Superior Court,* 111 Cal. 112 [43 P. 580], 'a means by which the power of the court in the premises can be inquired into; and for this purpose the review extends not only to the whole of the record of the court below, but even to the evidence itself, when necessary to determine the jurisdictional fact.'

"If, then, by looking at the evidence we can see that the court exceeded its power, we have a right to examine the evidence for that purpose. The evidence and proceedings in this case disclose clearly to our minds such an excess. . . ." (Italics added.)

Traditionally, in cases such as at bench, a writ of review has been allowed as against administrative bodies including an inferior tribunal exercising judicial functions when the procedure did not conform to constitutional or statutory requirements *or* where its decision was based on a misconception of the law or made arbitrarily and without regard to the evidence.

I would set aside the judgment and require the trial court to enter a judgment in favor of petitioner for the amount of the check. Costs to petitioner.