[No. 4860-4-II. Division Two. May 21, 1982.]

I-5 TRUCK SALES & SERVICE COMPANY, *Appellant,*
v. ROY UNDERWOOD, ET AL, *Respondents.*

*T. Charles Althauser,* for appellant.

*David L. Edwards,* for respondents.

PETRICH, J.—Plaintiff's appeal presents a question of first impression requiring statutory construction of the automotive repair act, RCW 46.71.010 *et seq.* The trial

court found that the plaintiff had not substantially complied with the dictates of the statute and that the course of conduct of defendants, who were unmindful of the act's existence, was not sufficient to constitute a waiver of rights granted to consumers by clear legislative expression. In recognition of the proper roles and powers of the judicial and the legislative branches of the government, we affirm.

I–5 is engaged in the business of selling and servicing heavy duty trucks and tractors. Between October 10, 1978, and April 10, 1979, plaintiff performed numerous repairs on and supplied parts to two log trucks owned or leased by the defendants. All but two of these separate repair incidents were for amounts greater than $50 and at no time during this series of transactions did I–5 issue a written estimate of the cost of repairs or obtain a written waiver of an estimate signed by the defendants.

By March of 1979 these transactions totaled approximately $2,000 and were charged by defendants on an account maintained with I–5. The only payment defendants made toward the balance was $250 in November of 1978. Furthermore, it is undisputed that I–5's repairs were properly performed and charged at a reasonable rate. Defendants complained of nothing and kept returning to plaintiff's business for various repairs and parts.

In March of 1979, defendants requested a major repair job performed on their 1971 Kenworth truck. The initial work at this time was to consist of an entire engine replacement and I–5 gave defendants an oral estimate of an anticipated cost at somewhere between $5,500 and $6,500. Defendant Anderson authorized plaintiff to perform this work by signing his name to a work order but the work order was totally devoid of any provision for an estimate of the costs of repairs.

After I–5 removed the engine from defendants' truck, they discovered major problems with the clutch and transmission. Plaintiff proceeded to make further repairs on the clutch and transmission, bringing the total cost of this entire transaction up to $9,250.22. This amount was also

charged to defendants' account with I–5 and defendants were given possession of the truck. Defendants' principal balance on this account at the time of trial was $11,303.38.

Defendants refused to pay their bill and in May of 1979 plaintiff filed a chattel lien with the Grays Harbor County Auditor against the vehicle which had been the recipient of the greatest share of the repair work—the 1971 Kenworth truck. A notice of this lien and demand for payment was given to the defendants.

Coincidentally, the Kenworth truck had been leased by the defendants from I–5 pursuant to a signed and written agreement dated December 28, 1978. A standard clause in this contract provided that the lessee shall bear all the expenses of repairs and maintenance on the leased equipment. Additionally, the contract allowed I–5 as lessor, to repossess the truck if the actions of the lessees, *i.e.*, default, insolvency, etc., transformed the lessor's secured position into one of insecurity. The lease agreement also contained a clause obligating the lessee to pay the lessor's attorney's fees should any legal proceeding be instituted thereunder.

In June of 1979, I–5 instituted this lawsuit against defendants. Plaintiff's complaint sought monetary damages in the amount of the total charges for repairs made on defendants' trucks and declaratory relief establishing defendants in default under the lease agreement. Plaintiff also requested reasonable attorney's fees pursuant to the lease agreement.

The defendants' answer charged plaintiff with violations of the automotive repair act, RCW 46.71.010 *et seq.*, in I–5's failure to provide defendants with a written estimate of the cost of repairs and in plaintiff's wrongful assertion of a chattel lien in contravention of RCW 46.71.050. Defendants further charged plaintiff with a violation of the Consumer Protection Act in accordance with the express statutory provision of RCW 46.71.070 which declares the wrongful assertion of a possessory or chattel lien to be an unfair practice under RCW 19.86.020.

Defendants prevailed on all theories in the action below.

This decision by the trial court precluded the plaintiff from collecting for all separate incidents of repair work which exceeded $50. Although the trial court did not find the defendants to have been damaged by the wrongful assertion of the chattel lien, they were awarded $250 in attorney's fees pursuant to RCW 19.86.090. This award was based only upon that portion of the action litigated under the consumer protection law.

I–5 concedes that the automotive repair act applies to the furnishing of parts and labor for the repair of trucks. Plaintiff's issues for review are: (1) whether I–5's oral estimate of the March 1979 engine replacement was in substantial compliance with the automotive repair act's requirement, RCW 46.71.040, that a written estimate be furnished to the customer prior to commencement of repairs; (2) whether defendants, by their actions in returning to plaintiff for repairs and in making a payment toward the charges for these repairs, have waived the right to assert I–5's noncompliance with the act; and (3) whether the action of the trial court in awarding attorney's fees to defendants pursuant to RCW 19.86.090 was proper, absent a finding that I–5's consumer violation resulted in any injury or damage to the defendants.

Although the automotive repair act has been in existence since 1977, it has never been construed in a published opinion. For purposes of this appeal, we are primarily concerned with that section of the act requiring a repairman to furnish the customer with a written estimate of the costs of repairs before work is commenced. RCW 46.71.040 reads as follows:

(1) If the price is estimated to exceed fifty dollars, the automotive repairman shall, prior to the commencement of supplying any parts or the performance of any labor, provide the customer a written estimate or the following choice of estimate alternatives:

"YOU ARE ENTITLED TO A WRITTEN PRICE ESTIMATE FOR THE REPAIRS YOU HAVE AUTHORIZED. YOU ARE ALSO ENTITLED TO REQUIRE THE REPAIRMAN TO OBTAIN YOUR ORAL

OR WRITTEN CONSENT TO EXCEED THE WRITTEN PRICE ESTIMATE. YOUR SIGNATURE OR INITIALS WILL INDICATE YOUR SELECTION.

1. I request an estimate in writing before you begin repairs. Contact me if the price will exceed this estimate by more than ten percent.

_____

2. Proceed with repairs but contact me if the price will exceed $_____.

3. I do not want a written estimate.

_____ "

These alternatives shall not be required when the customer's motor vehicle has been brought to the automotive repairman without face–to–face contact between the customer and the automotive repairman or the repairman's representative.

(2) If the customer signs or initials alternative 1 or if none of the alternatives is signed or initialed by the customer, the automotive repairman shall, prior to supplying any parts or performing any labor, give to the customer a written price estimate for the labor and parts necessary for the specific repair requested. The repairman may not charge for work done or parts supplied which are not a part of the written price estimate and may not charge the customer more than one hundred ten percent of the total shown on the written price estimate: _Provided,_ That neither of these limitations shall apply if, prior to performing the additional labor and/or supplying the additional parts, the repairman obtains either the oral or written authorization of the customer to exceed the written price estimate.

 Subsection (1) states that the repairman _shall_ provide the customer with either a written price estimate or a choice of three written alternatives. Generally, the use of the word _shall_ is considered a command and operates to create a duty absent any evidence of legislative intent to the contrary. _State ex rel. Nugent v. Lewis,_ 93 Wn.2d 80, 605 P.2d 1265 (1980). By including the third alternative among the choice of estimate alternatives, it is clear that the Legislature intended to provide an unambiguous proce-

dure whereby a customer may waive his right to a written estimate if such waiver is evidenced by a writing. The only express statutory exceptions to these requirements are in transactions which lack face–to–face contact between the repairman and his customer.

Subsection (2) also supports the interpretation that the repairman has the duty of furnishing a written cost estimate. This section requires the repairman to furnish the customer with a written estimate where none of the three alternatives have been acknowledged by the customer's initials. If the repairman fails in this duty, the Legislature has expressly prohibited him from charging for work performed or parts supplied. Even when a repairman does provide the customer with a written estimate, should the total cost exceed the estimate, the repairman may only charge the customer up to 110 percent of the original written estimate. Again, the Legislature expressly provided for the exception to these limitations; a repairman may get oral consent to exceed the initial written estimate if he does so prior to commencing work.

Not only is a repairman prevented from charging for work done in violation of these statutory duties, RCW 46.71.050 prohibits a repairman from asserting a possessory or chattel lien for any amount not reflected in a written estimate or the amount in excess of a written estimate in cases where the repairman has failed to obtain the customer's additional consent. A violation of RCW 46.71-.050 is specifically expressed in RCW 46.71.070 as an unfair act in violation of the laws of consumer protection, RCW 19.86.020.

The statute in clear and specific terms prohibits the automotive repairman from charging for labor and parts without first supplying a written estimate. This is neither an absurd nor incongruous result if each word or phrase therein is used within its ordinary meaning. *Pacific First Fed. Sav. & Loan Ass'n v. State,* 92 Wn.2d 402, 598 P.2d 387 (1979). In such an event the court may not resort to judicial construction in order to rectify what may appear to

be an unfair and injudicious result. *State v. Olson,* 31 Wn. App. 403, 642 P.2d 410 (1982).

Other states have enacted similar automobile repair statutes. These jurisdictions have recognized that the purpose of the legislation is to foster fair dealing and to eliminate misunderstandings in a trade which had been replete with frequent instances of unscrupulous conduct. The statutory design of discouraging violations requires the repairman to issue a written estimate or obtain a waiver in writing, and is a condition precedent to enforcing the repairman's right to collect for repairs. Hence, a repairman who finds himself outside the law cannot enforce collection of these repairs either at law or in equity.[1] *See Parada v. Small Claims Court,* 70 Cal. App. 3d 766, 139 Cal. Rptr. 87 (1977); *Bennett v. Hayes,* 53 Cal. App. 3d 700, 125 Cal. Rptr. 825 (1975); *DiBiase v. Garnsey,* 103 Conn. 21, 130 A. 81 (1925); *Brooks v. R.A. Clark's Garage, Inc.,* 117 N.H. 770, 378 A.2d 1144 (1977).

The Legislature having specifically decreed that the automotive repairman must give an estimate in writing, we must find that the plaintiff's oral estimate is not substantial compliance with the statute. Furthermore, the defendants by their actions have not waived the right to assert this act as a defense to plaintiff's action.

Although we are aware of the impact of our decision on I–5, as well as its ramifications for other similarly situated repair shops, the preventative remedy is a simple one and does not impose too great a burden upon those in the trade. The trial judge in his memorandum opinion has aptly char-

---

[1]Although this action was instituted by plaintiff for damages for the cost of repairs and/or declaratory relief seeking to establish a default by the defendants under the lease agreement, plaintiff is doomed to fail under either theory. It is basic in contract law and in equity that when the happening of a condition having the effect of terminating the obligation of the promisor is caused by the conduct of the promisor, his legal duty will not be terminated. *Christensen v. Felton,* 322 F.2d 323 (9th Cir. 1963); 5 S. Williston, *Contracts* § 677A (3d ed. 1961). The public policy underlying the automotive repair act cannot be circumvented by allowing plaintiff to prevail under the lease agreement since I–5's claim that the lease was breached was precipitated by its noncompliance with the act.

acterized the role of the judiciary in rendering this decision:

> While the result is harsh, the legislature can and has directed such result.

The final issue plaintiff presents for review alleges that the trial court erred in awarding reasonable attorney's fees to defendants under RCW 19.86.090 without a finding that plaintiff's violation of the laws of consumer protection, RCW 19.86.020, resulted in any injury or damage to the defendants.

I–5 concedes that the assertion of a chattel lien against defendants' truck was a per se violation of RCW 19.86.020, as expressly provided in RCW 46.71.070. Pursuant to RCW 19.86.090[2] private litigants are given standing to sue for damages or injunctive relief caused by any antitrust violation. This statute also provides for an award of attorney's fees and costs should the private litigant prevail.

Assuming arguendo that a per se violation of RCW 19.86.020 and a request for attorney's fees alone, absent any proof of injury or a request for injunctive relief, is insufficient to bring defendants within the ambit of RCW 19.86-.090, the trial court's decision may still be upheld on the basis of the contractual clause contained in the lease agreement allowing attorney's fees to the lessor–plaintiff should legal action be instituted thereunder.

RCW 4.84.330 states:

> In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable

---

[2]RCW 19.86.090 reads in pertinent part:

"Any person who is injured in his business or property by a violation of RCW 19.86.020, . . . . may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him, or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, increase the award of damages to an amount not to exceed three times the actual damages sustained: . . ."

attorney's fees in addition to costs and necessary disbursements.

Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract or lease which is entered into after September 21, 1977. Any provision in any such contract or lease which provides for a waiver of attorney's fees is void.

As used in this section "prevailing party" means the party in whose favor final judgment is rendered.

A decision of the trial court may be sustained if it is correct upon any legal ground within the pleadings and proof. *Retail Clerks Local 629 v. Christiansen,* 67 Wn.2d 29, 406 P.2d 327 (1965). Defendants, having prevailed in the action under the lease agreement, are entitled by statute to benefit from the contractual clause.

Judgment affirmed.

REED, C.J., and PETRIE, J., concur.

Reconsideration denied June 18, 1982.

Review denied by Supreme Court September 24, 1982.