[No. 5437–0–II.  Division Two.  May 23, 1983.]

PARBERRY EQUIPMENT REPAIRS, INC., *Respondent*, v.
DENNIS JAMES, *Appellant*.

*Craig Ritchie,* for appellant.

*Keith Kessler,* for respondent.

PETRIE, J.—Defendant, Dennis James, appeals a judgment in favor of plaintiff, Parberry Equipment Repairs, Inc., in the principal sum of $8,769.49 for repair of defendant's logging truck, and dismissing defendant's counterclaim for conversion of his truck and equipment. The dispositive question posed by this appeal is whether the Automotive Repair Act, RCW 46.71, is applicable to a business engaged in the repair of commercial machinery and heavy equipment which includes logging trucks. We hold the statute inapplicable and affirm the trial court's judgment.

For 18 years Garth Parberry has been in the business of repairing heavy equipment. The equipment serviced and repaired by Parberry consists of large commercial logging machinery such as yarders, shovels, log stackers, backhoes, cranes and commercial logging trucks. Much of the equipment repaired by plaintiff is not ordinarily driven on highways or streets.

In November 1978, at defendant's request, Parberry

agreed to install a used Cummins engine in defendant's Mack truck, a commercial logging truck employed in his business. This secondhand Cummins engine was purchased by James from a third party. Plaintiff began extensive conversion work, including rebuilding the transmission, necessary before the Mack truck could receive an engine of a different brand. James also requested that the brakes be rebuilt and the brake lights be rewired. Parts were supplied and labor performed with defendant checking on the progress day to day. All agreements were oral, and Parberry did not provide any written price estimates. In February 1979, the job was completed. James picked up the truck and Parberry billed him for $9,971.05 which represented parts and labor.

Although the truck immediately ran very well, the next day it broke down and was towed by plaintiff back to its place of business. An extensive examination of the used Cummins engine revealed a cracked block; ample evidence supported the probability that the block contained an imperceptible crack when defendant purchased it from the third party.

James left the inoperative Mack truck at Parberry's shop neither requesting further repairs nor attempting to retrieve it. By June of 1979 defendant had made payments toward his bill totaling $2,000. James had never complained that the bill was unreasonably high or that plaintiff's work was improperly performed.

On July 24, 1979, plaintiff brought this action for the balance owing for services and parts supplied. Defendant's amended answer interposed a defense based upon plaintiff's failure to provide a written estimate as required by the Automotive Repair Act, RCW 46.71.

The trial court found that plaintiff and defendant had entered into a valid enforceable contract for parts supplied and labor spent making the necessary conversion and other repairs on defendant's truck in preparation for the installation of defendant's Cummins engine. The trial court's findings that the repairs were properly performed, charged at a

reasonable rate, and performed at the request of defendant are amply supported by the evidence. In fact, defendant failed to present any evidence to the contrary; instead, he relied essentially on the defense based on plaintiff's lack of compliance with the requirements of the Automotive Repair Act. The trial court concluded that defendant had waived the requirements of that act by partial payment on the contract and that plaintiff was entitled to a judgment for the balance owing, $8,769.49.

The trial court made two factual findings, fully supported by the record, which after consideration of the legislative policy and intent underlying the Automotive Repair Act, we find sufficient to place Parberry Equipment Repairs, Inc., outside the reach of RCW 46.71. These findings of fact state:

*Nature of Equipment Repair Business*
1. Plaintiff Garth Parberry Equipment Repair, Inc. ("PARBERRY") repairs commercial machinery and heavy equipment, including log loading machinery.
2. No repairs are undertaken by PARBERRY for ordinary, non–commercial vehicles such as automobiles.

The Automotive Repair Act is a consumer protection statute designed "to foster fair dealing and to eliminate misunderstandings in a trade . . . replete with frequent instances of unscrupulous conduct." *I–5 Truck Sales & Serv. Co. v. Underwood*, 32 Wn. App. 4, 11, 645 P.2d 716 (1982). The "trade" whose mischief this statute seeks to control is the business of automotive repair, as the title of the act suggests. These are the businesses to which the ordinary consumer is directly exposed when he seeks to have his passenger vehicle repaired. These were the businesses within the contemplation of the Legislature when it enacted this statute. *See Regulating Automotive Repair: Hearings on HB 550 Before the House Commerce Comm.*, 45th Legislature (1977).

The language in the Automotive Repair Act imposes duties on an "automotive repairman," including the duty to provide a written estimate of the price of any job prior to

performing labor or supplying parts. The pertinent definitions contained in former RCW 46.71.010 state:

> (1) "Automotive repairman" means a person who engages in the business of repairing and/or diagnosing malfunctions of motor vehicles for compensation; and
>
> (2) "Automotive repairing" includes:
>
> (a) All repairs to vehicles commonly performed in a repair shop by a motor vehicle mechanic including the installation, exchange, or repair of mechanical parts or units for any vehicle or the performance of any electrical or mechanical adjustment to any vehicle; . . .

■■ Although plaintiff's "repair" of James' logging truck, if considered literally, may very well fall within the broader category of "motor vehicle" to which the statute refers, we find that such a simple and literal interpretation of the reach of this enactment would not be in conformity with the spirit or purpose of the law. We adopt the thoughtful analysis of the "equity of the statute" doctrine as enunciated by Justice Finley, speaking for a majority of the court, in *Murphy v. Campbell Inv. Co.,* 79 Wn.2d 417, 420, 486 P.2d 1080 (1971):

> It is a disservice or disfunction for the judicial branch to be dissuaded from performing its traditional interpretative function because nowadays—through intellectual phobia or myopia, or because of other more pragmatic political reasons—there is some tendency in some quarters to characterize performance of the traditional function as "judicial legislation"—a superficially appealing cliche, to say the least.
>
> It should be quite obvious that:
>
>> There are times when even the *literal expression* of legislation may be *inconsistent with the general objectives or policy behind it, . . .*
>
> (Italics ours.) J. Sutherland, Statutes and Statutory Construction § 6006 (Horack 3d ed. 1943).
>
> In this connection, it is well recognized that the underlying purpose inherent in the function of judicial interpretation of statutory enactments is to *effectuate the objective*—often referred to as the intent—of the legislature.

Plaintiff does not engage in the business of repairing

automobiles, nor are its employees characterized as "motor vehicle mechanics." Parberry's business is heavy equipment repair. Much of his work is on equipment not even driven on roads and streets. That plaintiff also repairs commercial trucks which literally fall within the definition of "motor vehicle" simply does not render plaintiff an "automotive repairman" under the statute.[1]

We recognize that this court applied the Automotive Repair Act to the repair of a truck in *I–5 Truck Sales & Serv. Co.* However, we do not find this similarity in *I–5* and the instant case controlling. In *I–5* the parties conceded that the act applied to them. *I–5*, 32 Wn. App. at 8. Moreover, the plaintiff in *I–5* was not in the business of repairing heavy equipment; its business was the repair of trucks of all types that were operable on the public highways.

Although this court finds the Automotive Repair Act to be less than a model of clarity, we are satisfied that its application to the facts of the case before us would do violence to the principle of equitable interpretation of a statute. *See* 2A C. Sands, *Statutory Construction* § 54.04 (4th ed. 1973):

> "The rule for the construction of remedial statutes is

---

[1]Testimony from Mr. Oren McCann, heavy equipment mechanic for plaintiff, is helpful in illustrating the distinction between an automotive repairman and a heavy equipment mechanic.

Q And how would you characterize the difference between an auto mechanic and a heavy equipment repairman?

A You have to know a lot more about the different, heavy equipment is a lot bigger variation of, more, well more knowledge about the bigger machinery I guess.

Q We have been talking about trucks today. Do you deal with equipment other than trucks?

A Yes.

Q Like what?

A Yarders, shovels, log stackers, all kinds of things.

Q A shovel, you mean, what is a shovel?

A A shovel is either something that loads logs or digs. A backhoe, it digs in the ground or they can use them as cranes too for lifting heavy pieces of machinery or something.

Q You're talking about vehicles we don't ordinarily find on highways?

A Yeah, right.

that cases within the reason, though not within the letter, of a statute shall be embraced by its provisions; and cases not within the reason, though within the letter, shall not be taken to be within the statute."

*Traudt v. Hagerman,* 27 Ind. App. 150, 60 N.E. 1011 (1901).

Because substantial evidence supports the facts underlying the award based upon principles of contract and quantum meruit, and because the Automotive Repair Act does not operate to defeat a recovery on those bases, this court will not disturb the judgment of the trial court. Furthermore, the record supports the trial court's dismissal of defendant's counterclaim.

Judgment affirmed.

WORSWICK, J., concurs.

PETRICH, C.J. (dissenting)—I dissent. The majority opinion seems to apply a quantitative analysis to the plaintiff's business activities in determining whether RCW 46.71, sometimes referred to as the Automotive Repair Act, governs the claim now on appeal. Considerable emphasis is placed on plaintiff's activities of repairing heavy logging equipment most of which is never operated on the highways of the state. I prefer to focus on the particular activities which give rise to this litigation. The dispositive question, it seems to me, is whether the act applies to the plaintiff who engages in the business of making repairs to logging trucks, which repairs are commonly performed in a repair shop by a motor vehicle mechanic, even though a substantial if not a major part of the plaintiff's activities is the business of repairing heavy equipment other than motor vehicles. Thus stated, I think the answer is obvious and I would reverse the judgment below.

The majority's attempt to distinguish this case from *I-5 Truck Sales & Serv. Co. v. Underwood,* 32 Wn. App. 4, 645 P.2d 716 (1982) is unpersuasive. The claimed distinguishing factor the majority relies on is that there the parties con-

ceded the act applied to them. What was conceded was that the act applies to the furnishing of parts and labor for the repair of trucks. *I–5,* 32 Wn. App. at 8. A fair reading of the act leads one to the inescapable conclusion that the act indeed applies to the furnishing of parts and labor for the repair of trucks and is not limited to automobiles as the majority implies.

The majority has set forth the pertinent statutory definitions of "automotive repairman" and "automotive repairing." "Automotive repairing" includes repairs to *vehicles* commonly performed in a repair shop by a motor vehicle mechanic. An automotive repairman is a person who engages in the business of repairing *motor vehicles.*

RCW 46.04.670,[2] which defines a vehicle, clearly applies to the logging truck repaired by the plaintiff. The logging truck also fits the definition of a motor vehicle in RCW 46.04.320,[3] which distinguishes an automotive repairman from other repairmen.

The quote from *Murphy v. Campbell Inv. Co.,* 79 Wn.2d 417, 486 P.2d 1080 (1971) is misleading when read in isolation from the issue then before the court. There, the court was faced with the question of whether a specialty contractor was barred by RCW 18.27 (contractors' licensing act) from seeking recovery for completed work.

Although the contractor did have in force the required public liability and property damage insurance and was otherwise qualified for a contractor's license, he neglected

---

[2]RCW 46.04.670 states:
"'Vehicle' includes every device capable of being moved upon a public highway and in, upon, or by which any persons or property is or may be transported or drawn upon a public highway, excepting devices moved by human or animal power or used exclusively upon stationary rails or tracks, except that mopeds shall be considered vehicles or motor vehicles for the purposes of chapter 46.12 RCW, but not for the purposes of chapter 46.70 RCW."

[3]RCW 46.04.320 states:
"'Motor vehicle' shall mean every vehicle which is self–propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails."

to include proof of insurance in his application for a license. The contractor resubmitted his application with proof of insurance and the license was thereafter promptly issued. The contract for the disputed work was entered into between the time of the original and resubmitted application for a license. The contractor was licensed during a considerable portion of the time the work contracted for was done. Nevertheless, the owner contended that the failure of the contractor to be licensed at the time the contract was entered into barred the claim. The court rejected this · defense and held that the contractor's substantial compliance with the act permitted him to seek judicial recovery of his claim. This was the backdrop for the court's pronouncement which the majority here relies on. On those facts the court determined that there was substantial compliance with the statute to authorize judicial enforcement of the claim. It is not authority to conform the legislative enactment to what we think it ought to be.

I believe the holding of the court in *Courtright v. Sahlberg Equip., Inc.,* 88 Wn.2d 541, 563 P.2d 1257 (1977), more appropriately applies to this case, wherein it was said at page 545:

> It might very well be that it would be wiser to provide by legislation for the result contended for by respondent workman. We may not, however, under the guise of construction substitute our view for that of the legislature. *Anderson v. Seattle,* 78 Wn.2d 201, 202, 471 P.2d 87 (1970); *State ex rel. Bolen v. Seattle,* 61 Wn.2d 196, 198, 377 P.2d 454 (1963). We are not a super legislature.

In my view this case is indistinguishable from *I–5 Truck Sales & Serv. Co. v. Underwood, supra,* and the judgment below should be reversed.

Reconsideration denied June 9, 1983.

Review granted by Supreme Court August 12, 1983.