[No. 49682–0. En Banc. February 16, 1984.]

GARTH PARBERRY EQUIPMENT REPAIRS, INC., *Respondent,* v. DENNIS JAMES, *Petitioner.*

STAFFORD, J., did not participate in the disposition of this case.

*Doherty, Doherty & Ritchie,* by *Craig A. Ritchie,* for petitioner.

*Keith L. Kessler* (of *Stritmatter, Kessler & McCauley*), for respondent.

*Kenneth O. Eikenberry, Attorney General, John R. Ellis, Deputy,* and *Jon P. Ferguson* and *Betsy R. Hollingsworth, Assistants,* amici curiae.

ROSELLINI, J.—This case, one of first impression, raises the issue of whether the provisions of the automotive repair act, RCW 46.71, apply to persons engaged in the repair of commercial machinery such as logging trucks. The trial court rejected petitioner Dennis James' allegation that the act was applicable. The Court of Appeals, Division One, affirmed (*Parberry Equip. Repairs, Inc. v. James,* 34 Wn. App. 728, 663 P.2d 1375 (1983)). We reverse.

The controversy arises from the following facts: During December of 1978, Garth Parberry, owner of respondent Garth Parberry Equipment Repairs, Inc. (Parberry), and an employee repaired two trucks owned by petitioner Dennis James. The first job, done on petitioner's Kenworth logging truck, included repairs to the truck's water pump, drive line and rear end. Petitioner was not given either a written or an oral estimate of the repair costs involved in this job.

Later that year, petitioner entered into an agreement for replacing an engine in a second logging truck. Garth Parberry told petitioner where to find an engine and agreed to install it. The engine in question was owned by a Mr. Roberts. Mr. Roberts owed Parberry $1,500 for repair work,

so petitioner agreed to pay Roberts' debt in return for the engine. Although installation of the engine required extensive conversion work, including rebuilding the transmission, neither Garth Parberry nor the mechanic provided a written estimate for the job. The repairs were completed in February 1979, and petitioner was billed $9,971.04 for parts and respondent's labor charges.

The truck became inoperable 1 day after petitioner received it. It was towed back to respondent's place of business. Eventually, it was discovered that the used engine had a hairline crack in the block.

The inoperative truck remained at respondent's place of business. Meanwhile, through June 1979, petitioner paid $2,000 toward this bill. On July 24, 1979, Parberry filed the present action to recover the balance. Petitioner answered, then amended his answer to allege that respondent could not recover because no written estimate, as required by RCW 46.71, was provided.

The trial judge held in favor of respondent. He reasoned that although respondent did not provide petitioner with a written estimate of the cost of repairs, as required by RCW 46.71, petitioner "waived any entitlement to reliance upon Chapter 46.71 RCW by making payments on [his] account." The Court of Appeals affirmed the judgment but on the ground that RCW 46.71 did not apply to commercial machinery repair businesses.

James' petition for review was granted to decide whether the automotive repair act applied to the transaction described above.

During the time of the incident here in question, RCW 46.71.040(1) provided:

(1) If the price is estimated to exceed fifty dollars, the automotive repairman shall, prior to the commencement of supplying any parts or the performance of any labor, provide the customer a written estimate or the following choice of estimate alternatives:
"YOU ARE ENTITLED TO A WRITTEN PRICE ESTIMATE FOR THE REPAIRS YOU HAVE AUTHORIZED. YOU ARE ALSO ENTITLED TO REQUIRE THE REPAIRMAN TO OBTAIN YOUR ORAL

OR WRITTEN CONSENT TO EXCEED THE WRITTEN PRICE ESTIMATE. YOUR SIGNATURE OR INITIALS WILL INDICATE YOUR SELECTION.

1. I request an estimate in writing before you begin repairs. Contact me if the price will exceed this estimate by more than ten percent. _____

2. Proceed with repairs but contact me if the price will exceed $ ___·__ _____

3. I do not want a written estimate _____ "

These alternatives shall not be required when the customer's motor vehicle has been brought to the automotive repairman without face–to–face contact between the customer and the automotive repairman or the repairman's representative.

In the present controversy, there is no question that Parberry or its employees did not give a written estimate. Failure to provide such an estimate, under the former statute, resulted in the repairman being "expressly prohibited . . . from charging for work performed or parts supplied." *I–5 Truck Sales & Serv. Co. v. Underwood,* 32 Wn. App. 4, 10, 645 P.2d 716, *review denied,* 97 Wn.2d 1033 (1982).

Respondent argues that the statute is inapplicable because Parberry is engaged in the repair of heavy equipment rather than motor vehicles. Petitioner argues, and Parberry admits, that Parberry repairs logging trucks. Petitioner concludes that the statute applies because logging trucks are in fact motor vehicles.

Moreover, petitioner and amicus curiae urge that the statute's application does not depend on the type of work generally done by the repair shop, but only upon the work done in the case at issue. The Court of Appeals agreed with respondent, reasoning that the intent of the statute was to protect the "ordinary consumer". 34 Wn. App. at 731. The court commented further on the purpose of the statute:

The "trade" whose mischief this statute seeks to control is the business of automotive repair, as the title of the act suggests. These are the businesses to which the ordinary consumer is directly exposed when he seeks to have his passenger vehicle repaired. These were the businesses within the contemplation of the Legislature when it

enacted this statute. *See Regulating Automotive Repair: Hearings on HB 550 Before the House Commerce Comm.*, 45th Legislature (1977).

34 Wn. App. at 731.

■ Although we agree ascertaining the legislative intent of a statute aids in interpreting an ambiguous statute, we cannot agree that this statutory construction tool allows a court to ignore the literal language of a statute. We conclude that the repair of a logging truck falls within the clear terms of the statute.

■ We start with the proposition that the former statute required an "automotive repairman" to give a written estimate. RCW 46.71.040. Automotive repairman was defined as "a person who engages in the business of repairing and/or diagnosing malfunctions of motor vehicles for compensation". Laws of 1977, 1st Ex. Sess., ch. 280, § 1, p. 966; RCW 46.71.010. Repairing was, in turn, defined as all "repairs to vehicles commonly performed in a repair shop by a motor vehicle mechanic including the installation, exchange, or repair of mechanical parts or units for any vehicle . . .". Motor vehicle, although not then defined in RCW 46.71, is defined in RCW 46.04.320 as "every vehicle which is self–propelled . . .".[1] Vehicle, in turn, means "every device capable of being moved upon a public highway and in, upon, or by which any persons or property is or may be transported or drawn upon a public highway . . .". RCW 46.04.670.

Thus, a logging truck is clearly a motor vehicle. *See also* RCW 46.04.650 (truck tractor is a motor vehicle). Notwithstanding the unambiguous language of the statute, the Court of Appeals chose to ignore the statute's clear lan-

---

[1]The Legislature has since defined automotive repairman as a "person who for compensation engages in the business of automotive repairing and/or diagnosing malfunctions of motor vehicles subject to RCW 46.16.010". Laws of 1982, ch. 62, § 1, p. 339. RCW 46.16.010 clearly applies to logging trucks. Thus, though the terms of this amended statute do not govern the instant case, this subsequent legislative act is consistent with our interpretation that the previous statute applied to the repair of commercial vehicles.

guage on the theory that it did not conform with "the spirit or purpose of the law." 34 Wn. App. at 732. Relying on *Murphy v. Campbell Inv. Co.*, 79 Wn.2d 417, 420, 486 P.2d 1080 (1971) and 2A C. Sands, *Statutory Construction* § 54.04 (4th ed. 1973), the Court of Appeals opined that to interpret the statute as petitioner requested would "do violence to the principle of equitable interpretation of a statute." 34 Wn. App. at 733. We disagree.

Application of this statute to the present case is not only required by the clear language of the statute, it is also consistent with, and in furtherance of, its general purpose. Owners of commercial trucks, as well as automobiles, are frequently ignorant of the vehicles' mechanical workings. They, as well as the noncommercial consumer, thus need the protection of this statute.

Moreover, the interpretation urged by the Court of Appeals actually acts to thwart the statute's protection of even "ordinary consumers", because in distinguishing this case from its decision in *I-5 Truck Sales,* the Court of Appeals emphasized that respondent did not normally do this type of repair. Consequently, the Court of Appeals decision can be interpreted as meaning that application of the act depends entirely on *how much* auto repair is done in a given shop. Under this analysis, where a consumer inadvertently chooses a repair shop that only infrequently repairs automobiles but generally repairs something else, he will not be protected by the terms of the act. We agree with amicus curiae; the intent of the Legislature was to protect the consumer and that cloak of protection should follow the consumer into whichever repair shop he selects.

Because the decision of the Court of Appeals conflicts both with this goal and the clear language of the statute, we reverse.[2]

WILLIAMS, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE,

[2]At the Court of Appeals level, petitioner urged that if the automotive repair act applied, he was entitled to damages under his counterclaim for damages under the Consumer Protection Act, RCW 19.86, and for unlawful detainer. Petitioner

226

DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

failed, however, to raise these issues in his petition for review, although each claim requires that this court grant affirmative relief beyond application of the automotive repair act. We conclude, therefore, that his failure to raise these issues has resulted in their waiver. *See* RAP 13.7(b).