[No. 22896. Department Two. March 20, 1931.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN STEVENSON, *Appellant.*[1]

*H. N. Martin,* for appellant.

*Joseph H. Johnston,* for respondent.

[1]Reported in 296 Pac. 1052.

BEELER, J.—On April 18, 1930, defendant entered his plea of guilty to the following information:

"John Stevenson is accused by the Prosecuting Attorney of Lincoln county, state of Washington, by this information of the crime of grand larceny committed as follows, to-wit: The said John Stevenson on or about the 17th day of April, 1930, at the county of Lincoln, state of Washington, then and there being, did then and there unlawfully and feloniously take, steal and drive away six (6) head of horses, said horses being in the lawful possession of the sheriff of Lincoln county under a mortgage foreclosure, said horses being of the value of more than twenty-five ($25) dollars, lawful money of the United States, with the intent of the said defendant to appropriate the same to his own use, said horses not being the property of the said defendant but were and are the property of the sheriff of Lincoln county, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the laws of the state of Washington."

The events leading up to the time defendant entered his plea may be briefly narrated: Prior to and on April 16, 1930, defendant owned six head of horses which he kept on his farm in Lincoln county, and, on that date, the sheriff took possession of the horses under a chattel mortgage foreclosure and posted three notices of sale on defendant's premises, one of which was posted or nailed on the barn near the stable door. The sheriff at the same time placed a keeper, who resided about two miles from defendant's ranch, in charge of the horses. On his return home later that evening, defendant observed the notice of sale, and, although thoroughly familiar with its contents, started with the horses to an adjoining county before dawn on the following day, and, after having traveled approximately thirty-five miles, was overtaken by the sheriff, placed under arrest, and taken to the office of

the prosecuting attorney at Davenport, Washington. As a result of this interview the prosecuting attorney filed the above information.

Later, during the same day of April 17, defendant, accompanied by the prosecuting attorney and county sheriff, appeared in open court for arraignment, at which time the information was read to him and he was given twenty-four hours within which to enter his plea. The court advised him that he was entitled to counsel, and, if he was unable to employ one, one would be furnished at the expense of the state. After arraignment, defendant was remanded to the county jail.

On the following day, he was again brought into open court by the county sheriff and county attorney, at which time he entered his plea of guilty, and was sentenced by the court to serve a period of not less than six months nor more than one year in the state penitentiary. Thereupon, defendant was again remanded to the county jail, where he remained until April 24, at which time he was transferred to the state penitentiary.

On May 14, 1930, defendant's counsel filed a motion to vacate the judgment and sentence based on appellant's plea of guilty. The matter came on for hearing on May 16, and, at the conclusion, the court refused to vacate the judgment and sentence, and entered an order accordingly, from which defendant prosecutes this appeal.

The record on appeal is extremely meager, it being limited to the information, judgment and sentence, minute entries made at the time of the arraignment and at the time of sentence, an affidavit by the prosecuting attorney setting forth in chronological sequence the various steps taken in the proceedings in the court below, from the time appellant was apprehended by the sheriff until he was sentenced by the court, appel-

lant's motion to vacate the judgment and sentence, and the final order denying the motion.

Appellant relies on five assignments of error, which raise but two questions: First, does the information allege facts sufficient to state a crime against appellant; and second, did the trial court abuse its discretion in refusing to vacate the judgment and sentence entered on appellant's plea of guilty? We shall dispose of the questions in the order designated.

As heretofore observed, the record is extremely brief. It totally fails to indicate whether the sufficiency of the information was challenged by demurrer or otherwise in the court below. Nor did we have the benefit of oral argument by appellant's counsel. But, inasmuch as the sufficiency of the information is discussed in the briefs of the respective parties, and in fairness to the appellant, we shall assume that that question was raised in the lower court and decided adversely to appellant.

The information is invulnerable to attack by demurrer. As drawn, it is substantially in the language of the statute. While it is true that one cannot steal that which belongs to him, yet, since the sheriff had made a valid levy he acquired a special interest or property in the horses. A somewhat similar question was before this court in the case of *State v. Nelson,* 36 Wash. 126, 78 Pac. 790, 104 Am. St. 945, 68 L. R. A. 283, and we there said:

"It will be observed that the information charges that the geldings were owned by one of the defendants, and it appears to have been the view of the trial court that one cannot steal property of which he is the owner. Such is, no doubt, true when the property is rightfully under the owner's immediate dominion and control; but one may be the general owner of a chattel, while another may have a special interest or property in it, together with the right to its immediate possession.

The facts alleged in the information show that the keeper of the livery barn had such a special property in these animals, and that he was entitled to their possession. Sections 6146, 6147, Pierce's Code, and §§ 5971, 5972, Bal. Code. He was interested in the animals to the extent of the value of the feed he had furnished them, and the care he had given them. The theory of the law is that he had added that much to the value of the owner's property, and that added value became property in himself, secured by the possession of the animals. To have taken the animals from him, under the fraudulent and unlawful circumstances alleged in the information, would have been to feloniously deprive him of his property.

" 'While one cannot, generally speaking, steal that which is his own, and it has been declared that this is the rule without qualification, yet it is well settled that a chattel, the general ownership of which is in one person, may be in the possession of another by virtue of some special right or title, as bailee or otherwise, so that a taking by the general owner from the person in possession will be larceny, if done with the felonious intent of depriving such person of his rights or charging him with the value of the chattel.' 18 Am. & Eng. Enc. Law, p. 499 (2d ed.)."

Vol. 36 C. J., p. 840, lays down the rule:

"Since a sheriff or other officer who takes property in attachment or execution acquires a special property therein, an indictment charging the larceny thereof may lay the ownership in the officer, . . ."

See, also, 17 R. C. L., p. 63.

But appellant insists that the trial court abused its discretion in refusing to vacate the judgment and sentence which followed appellant's plea of guilty. We can not agree with this contention. The trial court was painstakingly cautious in advising appellant of his right to counsel, in having the information read to him, and from the record we are convinced that appellant thoroughly understood and appreciated the effect of his plea of guilty.

362

The record indicates that appellant is endowed with considerable shrewdness. Although he knew the contents of the notice of sale, he cunningly attempted to remove the horses to an adjoining county, with the hope, apparently, that he might outwit the sheriff in the sale of his stock. We find no error in the record.

The judgment is affirmed.

TOLMAN, C. J., BEALS, MILLARD, and FULLERTON, JJ., concur.