[No. 10611–0–III.   Division Three.   February 26, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. ZEBULEN PIKE, *Appellant*.

*Carl E. Hueber* and *Winston & Cashatt*, for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Steven J. Nash, Deputy,* for respondent.

THOMPSON, J.—Zebulen Pike appeals his conviction for second degree theft of parts and services from an automobile repairman. He contends the State (a) failed to prove the repairman was entitled to payment for those parts and services and (b) failed to prove the repairman had a right of possession of the vehicle superior to the defendant. Although the facts indicate unexplained egregious behavior by Mr. Pike, we are constrained to reverse his conviction.

In late January 1989, Mr. Pike brought an engine he wanted rebuilt to a Spokane automobile repair shop owned by Gary Scofield and operated as J&S Automotive Service. Mr. Scofield and Mr. Pike discussed repair costs and a written work order was completed. At trial, Mr. Scofield was unable to recall the agreed cost of the repairs, but estimated $500.

The engine block could not be rebuilt because it was defective. It was replaced with a rebuilt core. Mr. Scofield installed parts, including main bearings, rod bearings, rings, clutch and gaskets. The cost was approximately $500.

In May 1989, Mr. Pike called Mr. Scofield and asked him to install the engine in a 1980 Volkswagen automobile. At that time the automobile was owned by and registered to Mr. Pike's stepfather. Mr. Scofield informed Mr. Pike there would be an additional charge for installation. Mr. Pike agreed to the additional charge by telephone and the Volkswagen was towed to J&S Automotive Service. Mr. Scofield determined the axle shaft and C.V. joint had been damaged and informed Mr. Pike about this. They agreed by telephone the parts and costs for these repairs would be added to the overall price.

On June 15, 1989, Mr. Scofield told Mr. Pike the automobile would be ready for pickup the next day. On the afternoon of June 16, Mr. Scofield left his shop to pick up parts. Keys to the Volkswagen and Mr. Pike's invoice were left on the front counter. When Mr. Scofield returned, the

invoice, keys and Volkswagen were gone. Several witnesses testified they later observed Mr. Pike driving the automobile and storing it at various locations throughout Spokane County.

Mr. Scofield testified no one was given permission to remove the Volkswagen from his shop without first paying him for his repairs. He testified the estimated total cost of parts and labor, including the rebuilt engine, was approximately $850. No written work order was introduced by the State as evidence.

Under RCW 9A.56.040(1)(a), a person is guilty of theft in the second degree for taking property or services having a value which exceeds $250, but does not exceed $1,500. Theft is defined as follows:

> To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services . . .

RCW 9A.56.020(1)(a).

An owner of property or services is defined as follows:

> a person, other than the actor, who has possession of or any other interest in the property or services involved, and without whose consent the actor has no authority to exert control over the property or services[.]

RCW 9A.56.010(8).

Mr. Pike argues he cannot be convicted of theft for taking an automobile if he had a legal right to possess it.[1] He argues he had the legal right to possess the Volkswagen because the State failed to show Mr. Scofield complied with the automobile repair act; without proof of compliance, Mr. Scofield was not entitled to payment and could not assert a possessory lien.

Depriving another of *any* ownership interest in property can be sufficient to support a theft conviction. *State v. Latham,* 35 Wn. App. 862, 865, 670 P.2d 689 (1983). Thus,

---

[1]Evidence at trial placed ownership of the automobile with Mr. Pike's stepfather, not Mr. Pike, until an unspecified time after Mr. Pike took the automobile from Mr. Scofield. Mr. Pike's stepfather filed a stolen car report but later withdrew it when Mr. Pike was charged with theft. Mr. Pike's stepfather had given him permission to use the car.

if the person from whom property is taken had a right of possession superior to that of the defendant, that person is deemed the owner as against the defendant. *Latham,* at 866. This principle was early applied in Washington in *State v. Nelson,* 36 Wash. 126, 78 P. 790 (1904). In *Nelson,* the defendants were charged with breaking and entering a stable with intent to steal horses. The trial court determined the horses taken belonged to one of the defendants and a person could not steal property which he owned. On appeal, the court held the trial court's conclusion was correct in situations where the property is rightfully under the owner's immediate dominion and control. However, if "another [has] a special interest or property in it, together with the right to its immediate possession", a taking with intent to deprive is larceny. *Nelson,* at 128.

Under the automobile repair act, a repairman is required to give customers a written price estimate *or* a choice of three alternatives enumerated in the act whenever repairs are estimated to exceed $75 and there is face–to–face contact between customer and repairman. RCW 46.71.040(1). The three alternatives require the customer's signature. RCW 46.71.040(1). Unless the customer elects to waive a written price estimate, a repairman cannot charge for work done or parts supplied. RCW 46.71.040(2). Absent a written price estimate, no possessory or chattel lien rights exist. RCW 46.71.040(1), .050.[2]

In *I–5 Truck Sales & Serv. Co. v. Underwood,* 32 Wn. App. 4, 10, 645 P.2d 716, *review denied,* 97 Wn.2d 1033 (1982), a repair shop brought a collection action for vehicle repairs. The court concluded that unless the customer waived his right in writing, the act, "in clear and specific terms", prohibited a repairman from charging for labor and parts without first supplying a written estimate. The court

---

[2]In *Pacific Gamble Robinson Co. v. Chef–Reddy Foods Corp.,* 42 Wn. App. 195, 198, 710 P.2d 804 (1985), *review denied,* 105 Wn.2d 1008 (1986), this court acknowledged there were three types of liens: common law, equitable, and statutory. A repairman's common law lien on an automobile and any equitable lien have been replaced by the statutory lien provisions in the automobile repair act.

went on to state judicial construction of the act should not be resorted to "in order to rectify what may appear to be an unfair and injudicious result". *Underwood,* at 10–11.

In *Webb v. Ray,* 38 Wn. App. 675, 678, 688 P.2d 534, *review denied,* 103 Wn.2d 1010 (1984), a car owner sought damages and recovery of his car from a repairman. The court determined that the automobile repair act[3] should be strictly construed and held that an oral estimate is not substantial compliance.

■ Mr. Scofield's right to payment for parts and services was dependent on compliance with the automobile repair act.[4] Without proof of a written price estimate in compliance with the act, Mr. Scofield did not have lien rights in the Volkswagen. Absent proof of right to payment or lien rights in Mr. Scofield, Mr. Pike had a right of possession superior to Mr. Scofield. Thus, he cannot be convicted of theft based on taking possession of the automobile. Nor can he be found guilty of theft of parts and service if the repairman cannot collect for them because of failure to comply with the act.

■ The State argues that Mr. Pike is attempting to assert a civil defense to a criminal action. We disagree. Theft requires proof beyond a reasonable doubt that defendant took the property or services "of another". Consequently, the existence of some recognized property interest in the Volkswagen by Mr. Scofield (not necessarily a lien) was an essential element of the State's case. Because

[3]The act was amended in 1982 and *Webb* was interpreting the prior act. However, the amendments do not affect the issues in this case.

[4]No proof was offered that the original work order complied with the act or was signed by Mr. Pike. Mr. Pike admitted a work order was filled out, but denied it complied with the act.

the State failed to prove this essential element, we must reverse Mr. Pike's conviction.

SHIELDS, A.C.J., and MUNSON, J., concur.

Review granted at 117 Wn.2d 1001 (1991).