[No. 58139-8. En Banc. March 5, 1992.]

THE STATE OF WASHINGTON, *Petitioner*, v. ZEBULEN PIKE, *Respondent*.

*Donald C. Brockett, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for petitioner.

*Carl E. Hueber, Marcus Westervelt,* and *Winston & Cashatt,* for respondent.

DURHAM, J. — The key issue presented by this case is the effect of the Automotive Repair Act (ARA), RCW 46.71, on a criminal case for theft of property and services. Following a jury trial in Spokane County Superior Court, defendant Zebulen Pike was convicted of second degree theft for taking his own car from a mechanic without paying for the repairs. The Court of Appeals reversed, holding that the State failed to prove that Pike had taken the "property of another".

*State v. Pike*, 60 Wn. App. 738, 807 P.2d 368 (1991). We affirm the Court of Appeals.

In late January or early February 1989, Pike brought an automobile engine into J & S Automotive Services (J & S) for the purpose of having it repaired. Although Pike discussed the cost of the repairs with J & S's owner, Gary Scofield, and received an oral estimate of about $500, the State did not present any evidence indicating the existence of a written price estimate for the proposed repair job. The engine was eventually rebuilt at a cost of approximately $500 for parts and labor.

The engine remained at J & S following the repairs. In May 1989, Pike contacted Scofield by telephone with a request to install the engine in a 1980 Volkswagen Rabbit.[1] After being informed that there would be an additional charge for the installation, Pike told Scofield to begin the work. The 1980 Rabbit was towed into J & S on an evening when Scofield was not present. In accord with Pike's authorization, the installation was completed along with some other miscellaneous repairs, which increased the total bill to about $850. The State did not offer any evidence of a written estimate for this phase of the repair job.

On June 15, 1989, Pike phoned Scofield and learned that he could pick up the car on the following day. The next day, Scofield left the keys to Pike's car and the work invoice on the front counter within reach of customers. When he returned later, the invoice, keys, and car were missing. Over the next several months, Pike was seen by numerous witnesses driving the 1980 Rabbit, and storing it at various locations throughout Spokane County. Pike never paid for the repairs, nor did he have permission from Scofield to take the vehicle.

The police became involved after Scofield called a detective he knew in the Spokane County Sheriff's Department. On December 13, 1989, Pike was charged with second

---

[1] At this point, the car was owned by Pike's stepfather. Pike had his stepfather's permission to use the car and later acquired title to it.

degree theft because he "did wrongfully obtain and exert unauthorized control over property and services, auto repairs, of a value exceeding $250, belonging to Gary Scofield, with intent to deprive Gary Scofield of such property and services." Clerk's Papers, at 1.

At a jury trial, Pike presented no defense, but relied primarily on a motion to dismiss the charges because the State failed to show that Scofield had complied with the ARA by offering Pike a written estimate for the repair work. Without proof of a written estimate, he argued, the repaired car could not be considered the property of another. Judge James M. Murphy denied the motion, and Pike was convicted. In accord with the information, the jury was only instructed on the elements of theft by taking. The Court of Appeals overturned the theft conviction. By failing to prove compliance with the ARA, the State had not proven that "the person from whom property is taken had a right of possession superior to that of the defendant." *Pike*, 60 Wn. App. at 741. We granted the State's petition for review.

■ Initially, we must determine under what circumstances a person can commit theft by taking his or her own property from the possession of another. A person is guilty of second degree theft if property or services worth more than $250 and less than $1,500 are taken. RCW 9A.56-.040(1)(a). Yet, in order to constitute theft, one must "wrongfully obtain or exert unauthorized control over the *property or services of another* or the value thereof, with intent to deprive him of such property or services". (Italics ours.) RCW 9A.56.020(1)(a).[2] Although the "property of another" element of theft is not defined in the theft statute, its meaning can be derived from the definition of "owner", which establishes the level of interest necessary to claim a right to property. An owner is defined as:

---

[2] Besides "theft by taking", it is also possible to have "theft by deception". *State v. Smith*, 115 Wn.2d 434, 438, 798 P.2d 1146 (1990). This type of theft involves obtaining the property of another "[b]y color or aid of deception". RCW 9A.56.020(1)(b). Theft by deception, however, was not charged or instructed in this case.

a person, other than the actor, who has possession of or any other interest in the property or services involved, and without whose consent the actor has no authority to exert control over the property or services.

RCW 9A.56.010(8). Thus, to constitute the property of another, the item must be one in which another person has an interest, and the defendant may not lawfully exert control over the item absent the permission of that other person. *See State v. Latham*, 35 Wn. App. 862, 864-65, 670 P.2d 689 (1983) (interpreting "personal property" under the robbery statute, RCW 9A.56.190), *review denied*, 102 Wn.2d 1018 (1984).

■ Generally, therefore, a person cannot steal his or her own property. *State v. Nelson*, 36 Wash. 126, 128, 78 P. 790 (1904). However, even where a person possesses legal title to a given item, theft can occur if that person takes the item from another who has a superior possessory interest. Liens, pledges, and bailments all have the potential to satisfy the theft statute by creating a superior possessory interest in another as against the owner of the item. *See generally* 2 W. LaFave & A. Scott, *Substantive Criminal Law* § 8.4 (1986); 3 C. Torcia, *Wharton on Criminal Law* § 393 (14th ed. 1980).

Washington has long recognized the principle that it is theft for an owner to take property from a person with a superior possessory interest. In the 1904 *Nelson* decision, this court affirmed the conviction of a man who took his own horses from a livery stable against the livery and boarding stable keeper's lien. In reaching its holding, this court stated:

[i]t will be observed that the information charges that the geldings were owned by one of the defendants, and it appears to have been the view of the trial court that one cannot steal property of which he is the owner. Such is, no doubt, true when the property is rightfully under the owner's immediate dominion and control; but one may be the general owner of a chattel, while another may have a special interest or property in it, together with the right to its immediate possession. The facts alleged in the information show that the keeper of the

livery barn had such a special property in these animals, and that he was entitled to their possession.

*Nelson*, at 128-29; *State v. Stevenson*, 161 Wash. 357, 360, 296 P. 1052 (1931).

██ Here, the only possible superior possessory interest in the repaired 1980 Rabbit is Scofield's mechanic's lien. An automotive mechanic's lien is no longer a common law lien, but a statutory one governed by the provisions of the ARA. Statutory liens are "stricti juris: one claiming the benefit of the lien must show he has complied strictly with the provisions of the law that created it." *Pacific Gamble Robinson Co. v. Chef-Reddy Foods Corp.*, 42 Wn. App. 195, 198, 710 P.2d 804 (1985), *review denied*, 105 Wn.2d 1008 (1986). This is no less true in a criminal case. To meet its burden of proof on the theft charge, the State cannot merely assume the existence of a valid mechanic's lien, but must prove beyond a reasonable doubt that the stolen item was the property of another. *See State v. McHenry*, 88 Wn.2d 211, 214, 558 P.2d 188 (1977).

██ In evaluating the existence of a mechanic's lien, it is important to remember that consumer protection statutes like ARA have been adopted "to foster fair dealing and to eliminate misunderstandings in a trade which [has] been replete with frequent instances of unscrupulous conduct." *I-5 Truck Sales & Serv. Co. v. Underwood*, 32 Wn. App. 4, 11, 645 P.2d 716, *review denied*, 97 Wn.2d 1033 (1982). As a remedial statute, the ARA is to be liberally construed to further this legislative purpose. *See Garth Parberry Equip. Repairs, Inc. v. James*, 101 Wn.2d 220, 225, 676 P.2d 470 (1984); *Nucleonics Alliance, Local Union 1-369 v. WPPSS*, 101 Wn.2d 24, 29, 677 P.2d 108 (1984). We will give the plain language of the ARA its full effect, even where the results sometimes seem harsh to the mechanic's interests. *I-5 Truck Sales*, at 10-11.

The ARA governs the conditions under which a mechanic may claim a valid mechanic's lien. RCW 46.71.040 requires a mechanic to provide either a written price estimate or a

choice of written estimate alternatives, prior to the commencement of repairs, where (1) the price of the repairs is estimated to exceed $75 and the mechanic chooses to reserve the right to assert a mechanic's lien, *or* (2) if the customer requests a written estimate. The choice of estimate alternatives requires the customer's signature or initials. Regardless of the estimate alternative chosen by the customer, including the no written estimate option, any mechanic wishing to assert a mechanic's lien must provide a written estimate. RCW 46.71.040(2). The only time a mechanic need not provide these estimate alternatives is when the repairs are for less than $75, or the customer's vehicle is brought to the mechanic without face-to-face contact. RCW 46.71.040(1).

RCW 46.71.050 establishes the circumstances in which a mechanic is barred from asserting a mechanic's lien.[3] Under this section, when a mechanic is required to provide a written estimate or a choice of estimate alternatives under RCW 46.71.040, a written estimate is always required prior to the assertion of a lien.[4] An oral authorization will preserve the lien for additional work, but only if

---

[3]The relevant language in RCW 46.71.050 provides:

"A repairman who performs work or supplies parts which are not a part of the written price estimate or which together exceed one hundred ten percent of the written price estimate, without the oral or written authorization of the customer or who is not required by RCW 46.71.040 to provide the customer with a written price estimate or a choice of estimate alternatives shall be barred from asserting a possessory or chattel lien for the amount of the unauthorized parts or labor upon the motor vehicle."

[4]*See* RCW 46.71.050. Even where a written estimate is given to customers, in compliance with the ARA, the assertion of a lien may be barred if the mechanic commits certain miscellaneous violations of the act. RCW 46.71.050 states that:

A repairman who supplies used, rebuilt, or reconditioned parts in violation of RCW 46.71.020 or who fails or refuses to return replaced parts as required by RCW 46.71.030 shall be barred from asserting a possessory or chattel lien for the amount charged for that replacement part upon the motor vehicle.

Other violations of the act, such as a failure to post signs informing customers of their rights, do not seem to have any effect on the assertion of a mechanic's lien. *See* RCW 46.71.043.

the initial job is supported by a written estimate. For work performed outside of the written estimate or work exceeding 110 percent of the estimate which is not authorized orally or in writing by the customer, the mechanic may not claim a lien for the unauthorized amounts. RCW 46.71.050.

In this case, the prosecution offered no evidence showing the existence of a written price estimate in compliance with the ARA. Although testimony indicated the existence of an invoice, a copy of the invoice was not admitted into evidence, and no testimony indicated the contents of the invoice. Thus, at least for the engine rebuild, the State failed to show the existence of a mechanic's lien. Without proof of a mechanic's lien, Scofield had no superior possessory interest in the rebuilt engine and Pike's theft conviction for taking the engine fails.

We still must determine if taking the 1980 Rabbit — the second part of the repair job — constituted theft. Under a narrow set of circumstances, a mechanic may assert a mechanic's lien despite the absence of a written estimate. The second derivation of RCW 46.71.050 states that a mechanic "who is not required by RCW 46.71.040 to provide the customer with a written price estimate or a choice of estimate alternatives" shall be barred from asserting a mechanic's lien for the "unauthorized" amounts. This language was added in the 1982 amendments to the ARA, and covers the specific situations where the estimated price of repairs is under $75, or the motor vehicle was brought to the mechanic without any face-to-face contact. Laws of 1982, ch. 62, § 6. Where one of these situations is present, a lien is created if there was either an oral or written authorization to proceed with repairs, even though it was unsupported by a preexisting written estimate.

■ Although Pike brought the 1980 Rabbit into J & S on an evening when Scofield was not present,[5] the engine

---

[5]The lack of face-to-face contact is unclear because the State only presented evidence showing that Mr. Scofield was not present when the 1980 Rabbit was towed into J & S. There was no evidence addressing whether his employees accepted delivery of the vehicle.

installation does not come within the face-to-face exception. The pivotal issue is whether the installation was part of the same auto repair job. Construing the ARA broadly to favor customers, the installation does not constitute a wholly independent transaction. Although Pike did not initially intend to have Scofield install the engine, installation was a foreseeable aspect of an engine rebuild job. Moreover, Pike received a single bill for both the engine rebuild and installation. As a general rule, a repair job is continuous so long as the mechanic has possession of the vehicle or the repaired part.

Thus, any lack of later face-to-face contact does not matter because the engine rebuild and installation were part of the same job. By failing to offer a written estimate when Pike initially brought the engine into the shop, and by not curing this failure by offering a written estimate for later repairs, Scofield gave up the right to assert a mechanic's lien. Absent a lien, Scofield could claim no superior possessory interest in the 1980 Rabbit, and Pike was free to remove his car from Scofield's possession.

The State is correct in challenging the Court of Appeals' legal finding that a mechanic who fails to comply with the ARA completely forfeits any right to payment for the repairs. In reaching this conclusion, the Court of Appeals erroneously relied on outdated case law, and ignored the effect of 1982 amendments to the ARA.[6] As we hold in the companion ARA case, *Clark v. Luepke*, 118 Wn.2d 577, 826 P.2d 147 (1992), under the current version of the ARA, a mechanic does not surrender the right to payment for authorized repairs by not providing a written estimate, but only loses the right to assert a mechanic's lien for those repairs.

 Nevertheless, the Court of Appeals was correct in overturning the conviction because a right to payment is only a general contractual claim against Pike, and not a

---

[6]Offering no analysis, the Court of Appeals dismissed the 1982 amendments in a short footnote stating that "the amendments do not affect the issues in this case." *State v. Pike*, 60 Wn. App. 738, 742 n.4, 807 P.2d 368 (1991).

superior possessory interest in the repaired car itself. In essence, by completing the repairs in accordance with Pike's authorization, when Pike failed to pay, Scofield gained a cause of action against him for the value of the repairs. This cause of action is contractual in nature: Pike contracted with Scofield to perform repair work on his 1980 Rabbit and then breached his contractual obligation to pay for the cost of repairs. As with all nonsecured contractual debts, the debt Pike owes Scofield for the cost of repairs is a personal debt; it is not chargeable to any particular piece of property. *State v. Polzin*, 197 Wash. 612, 618, 85 P.2d 1057 (1939).

Such a general contractual debt cannot support a theft conviction. First, it does not satisfy the "property of another" element because Scofield has no possessory interest in the car, only a right to recover damages from Pike in a civil lawsuit. Second, mere breach of a contractual obligation to pay does not create criminal liability absent a specific statute, or contractual fraud. *See, e.g.*, *Polzin*, at 619; RCW 9A.56.020 (theft by color or aid of deception). We are loath to turn the criminal justice system into a mechanism for the collection of private debts. Finally, a conviction based solely upon a breach of a contractual obligation to pay must fail because it violates the Washington State Constitution, which states that "[t]here shall be no imprisonment for debt, except in cases of absconding debtors." Const. art. 1, § 17. This constitutional provision "relates to run-of-the-mill debtor-creditor relationships arising . . . principally, out of matters basically contractual in nature." *Decker v. Decker*, 52 Wn.2d 456, 458, 326 P.2d 332 (1958). Although it is acceptable to imprison for fraud, one cannot be imprisoned merely for failure to pay a debt. *State v. Higgins*, 67 Wn.2d 147, 153, 406 P.2d 784 (1965), *cert. denied*, 385 U.S. 827 (1966); *State v. Enloe*, 47 Wn. App. 165, 169, 734 P.2d 520 (1987).

In the current case, the State chose to pursue a theory of theft by taking, rather than theft by deception. By doing so, it voluntarily took on the task of proving that the car was the property of another. It failed because compliance with

the ARA's lien provisions was not established. Absent this mechanic's lien, a general contractual obligation to pay does not support a criminal conviction. Therefore, the Court of Appeals' decision overturning Pike's second degree theft conviction is affirmed.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, SMITH, and JOHNSON, JJ., concur.