# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 69765-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| RANDY LEE ROYAL, | ) | |
| | ) | UNPUBLISHED |
| Appellant. | ) | |
| | ) | FILED: March 3, 2014 |

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED
2014 MAR 3 AM 10: 51

LAU, J. — Randy Royal appeals his convictions for first degree theft and delivery of a noncontrolled substance in lieu of a controlled substance. Because we conclude that his theft conviction is supported by sufficient evidence and that the trial court did not abuse its discretion in denying his conditional request to proceed pro se, we affirm.

## FACTS

Based on allegations that Royal sold an undercover officer prescription medication in lieu of cocaine, took the medication back, and then demanded more money, the State charged him with delivery of a noncontrolled substance in lieu of a controlled substance, cocaine, and first degree theft.

The day before trial, Royal's counsel informed the court that Royal wished to represent himself. The following colloquy ensued:

> MR. ROYAL: . . . I just, I'll have a better chance defending myself. I know, you know, the statutes and the rules of the courts and with the court ruling.
> COURT: Ready to go to trial tomorrow?
> MR. ROYAL: No. I would need some time to sit down and discuss with myself, (unintelligible) discovery is. I'd have to get a, some other documents I'm trying to do with Dr. Julie.
> COURT: With who?
> MR. ROYAL: Dr. Julie.
> [DEFENSE COUNSEL]: Dr. Julian. He . . . wanted me to hire Dr. Julian.
> COURT: You're ready to go tomorrow?
> [PROSECUTOR]: Yes, Your Honor.
> [COURT]: And you're ready to go tomorrow?
> [DEFENSE COUNSEL]: There's a couple of last minute details, but it looks like we're getting them wrapped up. So yes.
> COURT: All right. Mr. Royal, if you want to represent yourself, you can do that, but trial's tomorrow. I'm not going to grant your request to go pro se if it involves a continuance.
> MR. ROYAL: Well, I would need, I would need a couple days, Your Honor.
> COURT: I understand. I'm denying it.
> MR. ROYAL: You're denying it?
> COURT: Right. Right. That's not an unequivocal request for one thing. It's conditioned upon a continuance and I'm not going to grant it . . . .

Report of Proceedings (RP) (Nov. 5, 2012) at 21–23.

In its written order denying Royal's request, the court stated in part that the request "was not unequivocal and [was] contingent on a continuance request. Court incorporates its oral findings."

At trial, the evidence established that on April 23, 2002, Seattle Police Officer Kevin Jones took part in a drug "buy-bust" operation in downtown Seattle. Disguised as a homeless transient, Jones's role was to purchase narcotics from a street dealer and then signal to other officers when a purchase had been completed. The other officers would then arrest the suspect.

-2-

During the operation, Jones saw Royal standing with some people on the corner of Third Avenue and Bell Street. Jones asked if anybody had crack cocaine. Royal replied that he was the only one in the area that "had any soup." RP (Nov. 8, 2012) at 139–40. Jones testified that "soup" is a street term for crack cocaine.

Royal asked Jones how much cocaine he wanted, and Jones said "$30 worth of crack." RP (Nov. 8, 2012) at 140. As they walked northbound on Second Avenue, Royal said, "I can do that." RP (Nov. 8, 2012) at 143. Shortly thereafter, Royal handed Jones something wrapped in prescription paper, and Jones handed Royal $30. Royal then "snatched" the package out of Jones's hand but kept his $30. According to Jones:

> [Royal] started to get more animated, his arms started coming up. He said, "That's not enough, give me more," at which point I pulled out more money. I had a 10 [dollar bill] and I also had a 20 [dollar bill] in my hand. I gave him the $10 bill. He saw I had that 20. His arms are going back and forth like this, and he says, "All or nothing, all or nothing," and he steps into me. He's 6-2, 230 pounds. I'm 5-10, 170 pounds. He's towering over me, his arms are up. I gave him another $20. Just handed it to him. I was fearful. Gave him the money.

RP (Nov. 8, 2012) at 143–44.

After Jones gave Royal all of his money, Royal "slapped the drugs down" in Jones's hand. Jones said, "What the hell?" RP (Nov. 8, 2012) at 145. Royal replied, "Fuck me, no, fuck you." He then put his hand in his pocket, pointing it in a way that made Jones believe he had a gun. RP (Nov. 8, 2012) at 145, 154. Jones gave a "help" signal to the other officers, who moved in and arrested Royal.

A forensic scientist testified that the drugs inside the package were mirtazapine, a prescription antidepressant. The jury also heard excerpts from phone calls made by Royal where he admitted that he sold some "bunko dope to the police" and that the drugs were "nothin' but a bunko charge . . . . I threw some bunk dope to a motherfucker

undercover policeman." Exs. 20, 21, 22. In one of the calls, the other party asked

Royal if he sold the police his "medicine or something," and Royal answered, "Yeah,

that's all it was." Ex. 21.

The defense called no witnesses. The prosecutor argued in closing argument

that Royal committed theft when he took the drugs from Jones after a completed sale.

He maintained that Royal was not negotiating with Jones after he took the drugs back;

rather, he was trying to take advantage of him:

> [T]he defendant never gave Officer Jones cocaine. He never intended on giving him cocaine. He was looking for the money. He saw an opportunity. He saw a homeless person. He saw an opportunity to receive some money from someone who was looking for crack cocaine. After . . . he'd gotten the $30, he decided that wasn't enough, so he took the drugs back and demanded more money. Took the drugs that he'd already bought and then he saw it as an opportunity to get more money. Still, perception that it's a homeless person. There was no intent on [giving] him $30 worth of crack. We know that because he didn't have the crack cocaine on him. He was giving him the mirtazapine in lieu of it, a noncontrolled substance as testified to by Mark Strongman. Stealing the drugs back was just another means of getting more money.

RP (Nov. 13, 2012) at 306–07. In rebuttal, the prosecutor added, "[H]e said that they

were still in negotiation, okay? But notice, the defendant never gave back the $30. He

kept that." RP (Nov. 13, 2012) at 313.

The jury convicted Royal as charged. He appeals.

## DECISION

Royal contends his theft conviction is not supported by sufficient evidence.

Evidence is sufficient if, when viewed in the light most favorable to the State, it permits

any rational trier of fact to find the essential elements of the crime beyond a reasonable

doubt. State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (citing Jackson v.

Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). A claim of

insufficient evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn from it. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence is as probative as direct evidence. State v. Vermillion, 66 Wn. App. 332, 342, 832 P.2d 95 (1992).

To convict Royal of first degree theft, the State had to prove beyond a reasonable doubt that he wrongfully took property from the person of another with intent "to deprive the other person of the property." Royal contends the evidence was insufficient to meet this standard for two reasons. First, because the drugs were Royal's own prescription medication and because it is unlawful to possess a prescription drug without a prescription, Royal contends Jones never lawfully possessed the drugs and, therefore, never had a superior possessory interest. But Royal cites no authority, nor are we aware of any, supporting the proposition that a law enforcement officer cannot lawfully possess prescription drugs sold to him or her during an undercover operation.[1] Arguments unsupported by relevant authority need not be considered. State v. Johnson, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992) (appellate court will not review issue unsupported by relevant authority).

Second, relying principally on State v. Pike, 118 Wn.2d 585, 590, 826 P.2d 152 (1992), Royal contends that a person does not commit theft if they believe in good faith

---

[1] We note that contraband and illegal drugs are property for purposes of theft State v. Schoonover, 122 Wash. 562, 565, 211 P. 756 (1922) ("[The] outlawed and contraband nature [of intoxicating liquor] did not prevent it from being the subject of larceny."); State v. Donovan, 108 Wash. 276, 283, 183 P. 127 (1919) ("[I]ntoxicating liquor, though unlawfully held by the one in possession thereof, . . . was a subject of larceny."); cf. State v. Graham, 64 Wn. App. 305, 309, 824 P.2d 502 (1992) ("'[R]obbery may . . . occur when a person is in possession of property without any legally recognizable claim thereto.'") (quoting State v. Latham, 35 Wn. App. 862, 865–66, 670 P.2d 689 (1983)).

that they are taking their own property. He concludes that he did not commit theft because he took the drugs back during a negotiation over the price. There was, however, substantial evidence that negotiations had ended prior to the taking and that the subsequent "negotiations" were in reality a shakedown for more money. The weight, credibility, and persuasiveness of the evidence are matters for the trier of fact. State v. Walton, 64 Wn. App. 410, 415–16, 824 P.2d 533 (1992).

In addition, Pike is readily distinguishable. In that case, a mechanic agreed to install an engine in Pike's car. When the work was finished, Pike took the car without paying the bill. Pike, 118 Wn.2d at 588. The Pike court held that the taking was not a theft because the mechanic had not perfected a lien and therefore had only a contractual claim, not a possessory interest in the car. Pike, 118 Wn.2d at 590–94. Here, by contrast, Royal sold his interest in the drugs to a law enforcement officer. Thus, when he took the drugs back, he took the property of another.

Third, Royal argues that Officer Jones's "momentary, temporary loss of possession" was insufficient to constitute a theft. Appellant's Br. at 11. He concedes that intent to "permanently" deprive is not an element of theft. State v. Komok, 113 Wn.2d 810, 816–17, 783 P.2d 1061 (1989). He argues, however, that "there must be an intent to deprive that is more than fleeting seconds." Appellant's Reply Br. at 3. In support, he cites State v. Walker, 75 Wn. App. 101, 879 P.2d 957 (1994), and State v. Walters, 162 Wn. App. 74, 86, 255 P.3d 835 (2011). Neither case supports Royal's argument.

Walker compared theft of a motor vehicle and taking a motor vehicle without permission. The court concluded:

-6-

[T]he statutes proscribe different conduct. For instance, the joyriding statute would be violated by taking a motor vehicle without permission for a spin around the block. In contrast, the theft statute would be violated only if the defendant intended to deprive the owner of its use, as is the case when the motor vehicle is taken for a substantial period of time.

Walker, 75 Wn. App. at 106. While the court went on to state that the "'intent to deprive' element [of theft] nevertheless implies that the deprivation be of a greater duration than that required for taking a motor vehicle without permission," the court did not hold that the theft statute has a duration requirement. Walker, 75 Wn. App. at 107–08. Walker merely stands for the proposition that the duration of a taking is a circumstance bearing on the nature of a person's intent. As for Walters, other than stating, erroneously, that "intent to permanently deprive is an element of a theft prosecution,"[2] it contains no support whatsoever for Royal's claim. Walters, 162 Wn. App. at 86.

In any case, our state Supreme Court made it clear in Komok that courts are to give the word "deprive" its common meaning. Komok, 113 Wn.2d at 814–15. According to Komok, the common meaning of "deprive" is "[t]o take something away from"; "[t]o keep from having or enjoying"; or "[t]o take." Komok, 113 Wn.2d at 815 n.4 (final alteration in original) (citing WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 365 (1984); BLACK'S LAW DICTIONARY 529 (4th ed.1968)). Viewed in a light most favorable to the State, the evidence in this case was sufficient to support a finding that Royal took the drugs he sold to Jones with intent to deprive him of them.

Next, Royal contends the trial court abused its discretion in denying his request to represent himself pro se. Both the federal and state constitutions guarantee a

---

[2] This statement in Walters is contrary to the Washington State Supreme Court's holding in Komok.

defendant the right to self-representation. U.S. CONST. amends. VI and XIV; WASH. CONST. art. I, § 22; see also Faretta v. California, 422 U.S. 806, 818–19, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). To exercise the right, a defendant must make an unequivocal and timely request. State v. Vermillion, 112 Wn. App. 844, 51 P.3d 188 (2002) (citing State v. Breedlove, 79 Wn. App. 101, 106, 900 P.2d 586 (1995)). The trial court's decision on such a request is discretionary, and the degree of its discretion varies with the timing of the request. Breedlove, 79 Wn. App. at 107; State v. Fritz, 21 Wn. App. 354, 361, 585 P.2d 173 (1978). If the request is made "'well before the trial or hearing and unaccompanied by a motion for a continuance, the right of self representation exists as a matter of law.'" Madsen, 168 Wn.2d 496, 508 n.4 229 P.3d 714 (2010) (emphasis added) (quoting State v. Barker, 75 Wn. App. 236, 241, 881 P.2d 1051 (1994)). If, on the other hand, the request is made "'as the trial or hearing is about to commence, or shortly before, the existence of the right depends on the facts of the particular case with a measure of discretion reposing in the trial court in the matter.'" Madsen, 168 Wn.2d at 508 (quoting Barker, 75 Wn. App. at 241). Absent "substantial reasons," a last-minute request for self-representation "should generally be denied, especially if the granting of such a request may result in delay of the trial." State v. Garcia, 92 Wn.2d 647, 656, 600 P.2d 1010 (1979). Likewise, the lateness of a request for a continuance is also a relevant factor in determining whether a continuance should be granted. Rich v. Starczewski, 29 Wn. App. 244, 245–46, 628 P.2d 831 (1981). Decisions on requests for self-representation or a continuance are reviewed for abuse of discretion. Madsen, 168 Wn.2d at 504; State v. Grilley, 67 Wn. App. 795, 798, 840 P.2d 903 (1992).

Here, Royal's request to proceed pro se was made on the eve of trial and was thus untimely. It was also conditioned on the court granting an untimely continuance so that Royal could, among other things, speak with a medical expert who had not even been secured as a witness. Although the court was willing to allow Royal to proceed pro se if trial commenced as scheduled, Royal rejected this proposal. Considering the lateness of Royal's requests and the fact that trial had already been continued four times,[3] we cannot say the court abused its discretion in ruling that he could proceed pro se only if trial commenced as scheduled.

Affirmed.

WE CONCUR:

---

[3] Two of the continuances were agreed, one was requested by Royal, and one was requested by the State. Prior continuances are a relevant consideration in determining whether a court abused its discretion in denying an additional continuance. State v. Barnes, 58 Wn. App. 465, 471, 794 P.2d 52 (1990), aff'd, 117 Wn.2d 701, 818 P.2d 1088 (1991).