# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

DAVID P. OLSON,

Petitioner.

No. 77627-4-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 30, 2019

DWYER, J. — A jury convicted David Olson of vehicular assault after he struck and injured a motorcyclist. As a part of his sentence, the court ordered Olson to pay restitution of $40,744.57 to the victim. A jury in a civil case later awarded $415,034 in damages to the victim. When Olson's insurance carrier paid its $50,000 policy limit to the victim's attorney in trust for the victim, those funds were applied to reduce the civil judgment, but not applied to restitution. In postsentencing motions, Olson urged the sentencing court to reallocate the insurance proceeds to satisfy the restitution portion of his judgment and sentence. The court declined to do so. And based on the agreement of Olson and the State, the court allowed the victim, through his attorney, to participate in the proceedings involving restitution.

No authority prohibited the court from allowing the victim to participate in the postsentencing proceedings involving restitution. Because the parties' agreement to allow such participation was not unlawful, the court did not abuse

its discretion by enforcing it. And whether or not to credit funds paid to the victim by the insurer against the defendant's restitution obligation is a matter reserved to the discretion of the sentencing court. We discern no abuse of discretion here. We affirm.

I

Driving while intoxicated in Skagit County, David Olson struck and injured an oncoming motorcyclist, David Zinkand. In 2010, two years after the collision, a jury convicted Olson of vehicular assault. The court sentenced Olson to a 6-month term of confinement and imposed several nonrestitution legal financial obligations, including a $500 victim penalty assessment, a $200 criminal filing fee, and a $100 deoxyribonucleic acid (DNA) collection fee.[1] Several months later, the court entered an agreed order on restitution, ordering Olson to pay restitution of $40,744.57, based on the victim's medical expenses and lost wages.[2] The restitution order provided for payment to the Skagit County Superior Court Clerk and for the clerk to disburse the payments to the victim, but did not set forth a payment schedule.

In 2013, Zinkand filed a personal injury action against Olson and, ultimately, a jury awarded him damages of $415,034.04. The jury's verdict designated $165,034.04 for economic (special) damages and $250,000 for noneconomic (general) damages. Zinkand obtained a judgment on the jury's

---

[1] Olson paid the nonrestitution legal financial obligations to the Skagit County Clerk's Office in 2014.

[2] The restitution order and attached appendix lists only the total amount of restitution. By statute, restitution must be based on "easily ascertainable damages," such as property loss, expenses incurred for medical treatment, and lost wages, and may not be based on "intangible losses" such as "mental anguish, pain and suffering." RCW 9.94A.753(3). It is undisputed that the restitution order herein was based on Zinkand's medical expenses and lost wages.

2

verdict, plus costs. In connection with the civil suit, Olson and Zinkand stipulated that any funds paid toward restitution in the criminal matter would also be credited toward the civil judgment.

Olson appealed his criminal conviction and the trial court stayed his sentence pending appeal. In March 2013, while his sentence was stayed, Olson's insurer paid the $50,000 policy limit of his insurance policy. The check was made payable to Zinkand's attorney, in trust for Zinkand. After we affirmed Olson's conviction, the trial court lifted the order staying his sentence. See State v. Olson, noted at 170 Wn. App. 1032 (2012).

Several months after his release from jail, having served the confinement portion of his sentence, Olson reestablished his credentials and resumed working as a commercial airline pilot. Beginning in June 2014, Zinkand's attorney obtained writs of garnishment at regular intervals. These required Olson's employer to withhold 25 percent of his wages. The garnished wages were applied to reduce the amount of the civil judgment.

In October 2014, Olson filed a motion in the criminal cause to make restitution concurrent with civil judgment and to strike accrued interest. Olson asked the sentencing court to discharge his restitution obligation to account for the payment made by his insurer to the victim. Based on Zinkand's agreement that the civil judgment represented the total recovery to which he was entitled and his agreement to credit restitution payments toward the civil judgment, Olson argued that, reciprocally, all payments toward the civil judgment should apply to the restitution obligation. He also asked the criminal court to strike the interest

3

accrued on the restitution obligation. In connection with this motion, the sentencing court entered an order, enforcing the agreement between Olson and the State, and allowing Zinkand, through his attorney, to appear in the criminal matter and "provide briefing and oral argument regarding restitution matters in this case."

At the hearing, Zinkand agreed that he could not recover twice for the same losses, recognizing overlap between a portion of the special damages awarded by the jury and the restitution imposed by the court. Zinkand took the position that all payments should be credited toward the civil judgment until the "last [$]40,000" in order to provide "leverage" to enforce the civil judgment. The State was present at the hearing but did not participate.

The sentencing court denied the motion and declined to credit the payments, made via the insurance payment and garnishment, to restitution. The sentencing court's order did not prevent Olson from making voluntary payments toward the restitution obligation directly to the court.

More than two years later, in March 2017, Olson, through new counsel, filed a "Motion to Reduce or Strike Restitution and Accrued Interest." Although Olson relied on statutes governing restitution and restitution interest that had not been cited in his 2014 motion, he sought the same relief. Namely, he requested that the court deem the restitution obligation satisfied and discharge the debt.

Olson claimed that there were "extraordinary circumstances," as contemplated by the applicable statute, because his insurer paid, and the victim received, an amount that exceeded the amount of the restitution obligation, and

4

yet he remained subject to a "lifelong" order to pay the restitution. Olson asserted that it was improper to allow the use of the criminal case as a means to secure the collection of a civil judgment. He also asked the sentencing court to strike any interest accrued on the restitution debt, arguing that if the insurance proceeds had been allocated to restitution, no interest would have subsequently accrued.

The State responded that Olson was merely attempting to relitigate the unchallenged 2014 order. Pointing to Olson's substantial reported earnings since entry of the 2011 order, the State urged the court to deny the motion.

Following a hearing in October 2017, the sentencing court denied the motion. In accordance with its 2014 ruling, the court determined that there were no "extraordinary circumstances" to warrant modifying the restitution obligation and no basis to strike the accrued interest.[3] Olson appealed from that order.

In the meantime, approximately two months later, under the criminal cause number, the Skagit County Superior Court authorized collection of restitution by sending a notice of involuntary wage assignment to Olson's employer.

Zinkand then filed a motion in the criminal case, seeking to "coordinate" the collection of restitution with the collection of the civil judgment. Zinkand's attorney informed the court that he had been regularly garnishing Olson's wages for more than four years and that the unpaid portion of the civil judgment amounted to almost $300,000. He argued that collection processes should not

---

[3] RCW 10.82.090(2)(b) allows the sentencing court to reduce restitution interest only if the principal balance has been paid in full.

be simultaneous because duplicative efforts resulted in unnecessary costs and complications. Zinkand's counsel argued that the civil judgment collection should precede collection for restitution, in part, based on Olson's alleged prior statement that he intended to retire when he turned 60.[4] Therefore, he wanted to "keep restitution in the background" because it has "teeth."

The day before the hearing on Zinkand's motion, Olson filed a motion for a continuance, but did not otherwise respond. Defense counsel expressed "great concerns" about Zinkand's appearance in the criminal matter and questioned the court's authority to authorize that participation.[5] As to the merits, Olson did not object to garnished wages being applied to restitution, based on his position that all funds received by the victim should apply to both the civil judgment and restitution.

Both Zinkand and the State opposed a continuance. The State took no position on Zinkand's motion, stating that its only interest was in full compensation to the victim.

The court denied Olson's motion to continue and granted Zinkand's motion. The court noted that the garnishment issue arose because Olson was not voluntarily paying either obligation and that the simultaneous collection of both debts prejudiced Zinkand.[6] The court entered an order "Directing

---

[4] This apparently did not occur because, according to the date of birth listed on Olson's judgment and sentence, he turned 60 in 2017.

[5] Defense counsel also requested a continuance to brief the issue of the victim's participation in the criminal matter and also to allow Olson to personally attend the hearing.

[6] Zinkand's counsel explained that, unlike wage assignment for collection of restitution, civil garnishment requires renewal each time, and splitting the 25 percent deduction between restitution and the civil judgment prolonged the victim's need to retain counsel to facilitate collection of the civil judgment.

Restitution Collection Delay," stating that "collection of restitution is stopped and will not be continued without the written agreement" of Zinkand, through his attorney. The order directed the superior court clerk's office to disburse the funds that had been collected for restitution to Zinkand's trust account held by his attorney.[7] The court orally clarified that the language of the order was not intended to prevent Olson from making voluntary payments toward restitution.

Both parties moved for reconsideration. On June 19, 2018, the sentencing court entered a memorandum decision denying both motions.

We granted discretionary review of the October 2017 order denying the motion to strike or reduce restitution and accrued interest.[8]

II

Despite stipulating to the victim's participation in the proceedings involving restitution, Olson challenges that participation on appeal. He claims that the parties' agreement is a "nullilty" because it allowed the State to delegate its prosecutorial function to a private party and the sentencing court lacked authority to authorize it.

Our state constitution specifically provides that all prosecutions shall be conducted by and in the name of the State of Washington. CONST. art. IV, § 27. Olson's prosecution was conducted by the elected prosecutor of Skagit County. The court did not allow a private party to control the prosecution by enforcing the

---

[7] The order further directs that amounts collected for restitution in the future must be applied first to principal, then to interest.

[8] Discretionary review was also granted as to the April 2018 order "Directing Restitution Collection Delay" and the June 2018 order denying reconsideration. However, Olson makes no specific arguments on appeal with respect to the later orders. In addition, Zinkand filed briefing in this appeal. Although he did not seek prior authorization under RAP 10.1(h) to do so, we have exercised our discretion under the rule and considered the briefing in resolving this matter.

agreement between the State and Olson. The trial court permitted the victim to participate only as a nonparty, in postconviction, postsentencing, proceedings limited to the issue of restitution. For the reasons that follow, we conclude it was within the court's discretion to do so.

Our statutes reflect the significant interest of victims in the matter of restitution. In the absence of "extraordinary circumstances," victims are entitled to entry of an order of restitution in felony cases. RCW 9.94A.753(5) (restitution "shall be ordered"); see also RCW 9.94A.505(8) (a sentencing court "shall order restitution"). And although restitution is also punitive, the remedial component of restitution is "strong" because restitution is directly connected to the victim's losses. RCW 9.94A.753(3); State v. Kinneman, 155 Wn.2d 272, 279-81, 119 P.3d 350 (2005); State v. Shultz, 138 Wn.2d 638, 643-44, 980 P.2d 1265 (1999). The decision as to whether to impose restitution is a part of the sentencing process and during that process, RCW 9.94A.500(1) provides for the victim, the victim's survivor, or the victim's representative to be heard. And finally, RCW 9.94A.753(9) specifically provides that victims may enforce court-ordered restitution in the same manner as a civil judgment.

Consistent with these statutory provisions, the people of Washington adopted the victims' rights amendment to our state constitution. See CONST. art. I, § 35. The mandate of the amendment is a guaranty to victims of a "meaningful role in the criminal justice system." CONST. art. I, § 35. The amendment provides crime victims with specific "basic and fundamental rights" in criminal proceedings, including the right to notice, the right to attend proceedings "subject to the

discretion of the individual presiding over the trial or court proceedings," and the right to make a statement at sentencing.[9] CONST. art. I, § 35. Our Supreme Court has recognized that this amendment speaks powerfully to the fundamental principle of restoring what is taken from a victim of crime. State v. Gentry, 125 Wn.2d 570, 628-29, 888 P.2d 1105 (1995).

It is against this statutory and constitutional background that the sentencing court allowed the victim to participate in restitution matters, in accordance with the parties' agreement. Olson provides no authority suggesting that the court was prohibited from doing so in these circumstances. Victims' interest in restitution, as codified by provisions of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, and embodied in the victims' rights amendment, does not undermine the State's authority to conduct criminal prosecutions. Indeed, in State v. Wiens, 77 Wn. App. 651, 654, 894 P.2d 569 (1995), we addressed a defendant's challenge to former RCW 9.94A.145(4) (1989), which authorized crime victims to enforce a criminal restitution order in the same manner as a civil judgment.[10] Similar to Olson's argument, Wiens claimed that the statute infringed on the State's exclusive authority and obligation to prosecute criminal matters. Wiens, 77 Wn. App. at 654. Rejecting his argument, we reasoned that because the statute authorized the victim to act only

---

[9] CONST. art. I, § 35 (amend. 84), provides in part:
     Upon notifying the prosecuting attorney, a victim of a crime charged as a felony shall have the right to be informed of and, subject to the discretion of the individual presiding over the trial or court proceedings, attend trial and all other court proceedings the defendant has the right to attend, and to make a statement at sentencing and at any proceeding where the defendant's release is considered, subject to the same rules of procedure which govern the defendant's rights.
[10] Now codified at RCW 9.94A.760(5) (legal financial obligations) and RCW 9.94A.753(9) (restitution).

after conviction, the "intervention" in question did not interfere with the State's constitutional authority to prosecute criminal actions.[11] Wiens, 77 Wn. App. at 655.

The court's discretion to allow a victim to be heard on restitution matters does not mean that victims have an absolute right to such participation, or a right to participate in a particular manner. While not required, the sentencing court here determined that it was appropriate not only to allow the victim to respond to Olson's motion, but also to allow the victim to file a motion seeking the court's intervention in the garnishment process. We see no reason why the sentencing court should not have the discretion to permit such participation and determine the appropriate manner and scope of the participation, as the court did here. To be clear, nothing in the SRA or the constitution makes victims parties to criminal proceedings or affords victims a right to appeal a criminal judgment or restitution order. See e.g., United States v. Kovall, 857 F.3d 1060, 1066, 1073 (9th Cir. 2017) (while victims have a "discrete and quantifiable" interest in restitution, they have no statutory or constitutional right to appeal a federal criminal judgment); United States v. Aguirre-Gonzalez, 597 F.3d 46, 53 (1st Cir. 2010) ("[C]rime victims are not parties to a criminal sentencing proceeding. Thus, the baseline rule is that crime victims, as non-parties, may not appeal a defendant's criminal sentence." (citation omitted)); State v. Gault, 39 A.3d 1105, 1113-14 (Conn.

---

[11] Our courts have also allowed limited intervention by nonparties in criminal matters to challenge trial court orders sealing records. See Yakima County v. Yakima Herald-Republic, 170 Wn.2d 775, 801, 246 P.3d 768 (2011), overruling State v. Bianchi, 92 Wn.2d 91, 593 P.2d 1330 (1979). In Herald-Republic, the court determined that such intervention by a nonparty under GR 15(e) for the purpose of moving to unseal court records may occur only "after the criminal trial is completed or the defendant has pleaded guilty." 170 Wn.2d at 801 n.11.

2012) (dismissing victim's appeal to enforce rights afforded under state's constitutional crime victims' rights amendment because only the State and the accused are parties to a criminal action).

We conclude that the sentencing court did not impermissibly allow the State to delegate the prosecutorial role. Nor did it abuse its discretion in affording the victim an opportunity to be heard.

III

Olson also challenges the trial court's denial of his 2017 motion to strike or reduce restitution and restitution interest.

The authority to impose restitution is derived from statute. State v. Davison, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991). As previously noted, when imposing a sentence under the SRA, restitution for injury is mandatory absent extraordinary circumstances. RCW 9.94A.753(5) provides, in relevant part:

> Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property . . . unless extraordinary circumstances exist which make restitution inappropriate in the court's judgment and the court sets forth such circumstances in the record.

Restitution must be paid to the superior court clerk and then disbursed directly to the victims. Shultz, 138 Wn.2d at 644.

The trial court also has authority to modify restitution. RCW 9.94A.753(4) specifically provides that the "portion of the sentence concerning restitution may be modified as to amount, terms, and conditions during any period of time the offender remains under the court's jurisdiction." A court's decision to modify the amount or terms of a restitution order under RCW 9.94A.753(4) is reviewed for

abuse of discretion. State v. Gray, 174 Wn.2d 920, 931, 280 P.3d 1110 (2012) (allowing modification of restitution to include expenses incurred before the court issued the original restitution order). The only limitation on the court's discretion is that it "may not reduce the total amount of restitution ordered because the offender may lack the ability to pay the total amount." RCW 9.94A.753(4).

Olson claims that the court's ruling denying his motion was manifestly unreasonable because, by refusing to extinguish his restitution obligation based on his insurer's payment to the victim, the sentencing court permitted "the criminal case to be used as leverage over the civil collections." He relies on language from the decision in State v. Pike, 118 Wn.2d 585, 595, 826 P.2d 152 (1992), cautioning against allowing the criminal justice system to be used as a "mechanism for the collection of private debt." But Pike involved a conviction of theft by taking allegedly committed when the defendant reclaimed his own vehicle from a mechanic without authorization and without paying for repairs performed. Pike, 118 Wn.2d at 587. The court observed that the contractual debt owed to the mechanic created a right to recover damages in a civil lawsuit, but could not form the basis for criminal liability absent a specific statute or evidence of contractual fraud. Pike, 118 Wn.2d at 595. In contrast, Olson's private debt was not the basis for his criminal conviction. Pike is wholly inapposite.

To the extent that Olson suggests that the sentencing court's order *requires* restitution to be paid last, after he fully satisfies the civil judgment (minus $40,000) and interest upon that judgment, he is mistaken. Although the victim's

attorney suggested that it might be possible to prevent Olson from making payments to the court clerk's office toward restitution, the sentencing court correctly confirmed at several points that none of its orders prevented Olson "from making voluntary payments toward this restitution."[12] Legal financial obligations, including restitution, are conditions of a sentence, and a willful failure to comply with these conditions can result in further confinement. See RCW 9.94A.760(11). This statutory scheme does not allow the sentencing court to prevent a defendant from voluntarily complying with the criminal judgment, which could then provide the basis for incarceration.

In addition, to the extent the State suggests that Olson was underinsured and that his "low" policy limit of $50,000 supports the denial of his motion, we disagree. Although Olson's insurance policy is not in the record, there is nothing to indicate that it did not satisfy the requirements of law set forth in RCW 46.29.090(1). The mandatory coverage amounts encompassed in the statute reflect policy choices that the legislature has the power to make, and also, to amend. See El Centro De La Raza v. State, 192 Wn.2d 103, 428 P.3d 1143 (2018).

Olson contends that the sentencing court abused its discretion by denying his motion because the fact that all payments made to the victim on his behalf were not credited against his restitution obligation constitutes an "extraordinary" circumstance. Olson cites to no authority that supports his position. And, in fact,

---

[12] With respect to the allocation of payments made to the court to satisfy the terms of the judgment, the court must, of course, be mindful of the distribution order set forth in RCW 9.94A.760(2).

it is well-settled that "[t]he decision whether or not to credit payments to the victim by [the defendant's] insurance carrier against the restitution order [is] a matter within the trial court's discretion." State v. Shannahan, 69 Wn. App. 512, 519, 849 P.2d 1239 (1993) (citing State v. Young, 63 Wn. App. 324, 333-34, 818 P.2d 1375 (1991)).

Even though neither case involves a separate civil judgment, the decisions in State v. Young and State v. Shannahan are instructive. Young was convicted of two counts of vehicular homicide and, as restitution, was ordered to pay the monthly child support obligation of one of the deceased victims. Young, 63 Wn. App. at 326. Because Young's insurance carrier had tendered payment to the victim's family, he argued on appeal that, as a matter of law, the insurance funds had to be allocated first to "easily ascertainable damages," such as lost child support, and then to other items of damage. Young, 63 Wn. App. at 335. The appellate court rejected the argument, noting that the manner of allocating insurance payments against a victim's loss was a matter for the court's discretion. Young, 63 Wn. App. at 335.

Similarly, a jury convicted Shannahan of negligent driving and the court ordered restitution of approximately $11,000 for the victim's injuries. Shannahan, 69 Wn. App. at 514. Thereafter, the defendant's insurer paid $25,000, the policy limit, to the victim. Shannahan, 69 Wn. App. at 514. Shannahan argued that as a result of funds his insurer tendered to the victim, his restitution obligation should be discharged because the amount received by the victim from his insurer exceeded the amount of court-ordered restitution. Shannahan, 69 Wn. App. at

14

518-19. We rejected this argument, holding that the manner of allocating insurance payments was within the court's discretion. Shannahan, 69 Wn. App. at 519. Under Shannahan and Young, the sentencing court does not abuse its discretion when it applies insurance payments "first against items of loss that are not recoverable by restitution, 'thereby maximizing that portion of the loss that the victim or next of kin will recover.'" Shannahan, 69 Wn. App. at 519 (quoting Young, 63 Wn. App. at 336).

Likewise here, the sentencing court did not abuse its discretion when it declined to allocate the insurance payments in the manner advocated by Olson. And in these circumstances, when the restitution amount overlapped with the special damages awarded by the jury, but not with the general damages awarded by the jury, the court's ruling was consistent with doctrines that promote full compensation of the victim in the context of insurance reimbursement and subrogation. See Thiringer v. Am. Motors Ins. Co., 91 Wn.2d 215, 219, 588 P.2d 191 (1978) (insurer not entitled to reimbursement until the insured had been made whole; therefore, insurance proceeds are allocated to general damages before special damages); Sherry v. Fin. Indem. Co., 160 Wn.2d 611, 622, 160 P.3d 31 (2007) (recognizing Washington's "broad view of full compensation").

In a different case, the facts may be such that it would be appropriate for a judge to order that insurance payments be first allocated to a restitution obligation. This merely illustrates the wisdom of leaving such a determination to the sound discretion of the sentencing judge.

We affirm the sentencing court's order denying Olson's motion to reduce or strike restitution and accrued interest and the subsequent restitution orders.

Dwyer, J.

WE CONCUR:

Smith, J.

Appelwick, C.J.